**STATE of South Dakota, Plaintiff and Appellee.**

v.

**Gregory Jay THILL, Defendant and Appellant.**

**No. 17382.**

Supreme Court of South Dakota.

Argued May 20, 1991.

Decided July 17, 1991.

Mark Barnett, Atty. Gen., Wade A. Hubbard, Deputy Atty. Gen., Pierre, for plaintiff and appellee.

Thomas W. Parliman, Sioux Falls, for defendant and appellant.

WUEST, Justice.

On October 21, 1989, at approximately 1:00 a.m., the Sioux Falls Police Department set up a sobriety roadblock for southbound traffic on Minnesota Avenue in Sioux Falls, South Dakota. At the point of the roadblock, a patrol car was stationed with its red lights flashing. Another patrol car with its amber lights flashing was parked approximately 350 feet north of the roadblock. Traffic cones were set in the street to direct the southbound traffic through the roadblock.

Officer Persing (Persing) was on duty and assigned to check cars at the roadblock when he observed Gregory Thill's (Thill) car make a left hand turn into a driveway at approximately the location of the patrol car with the flashing amber lights. Persing watched as Thill stopped in the driveway, backed out into the street and proceeded northbound, in the direction from whence he came. Persing immediately got into his patrol car and followed Thill. Thill turned left approximately two blocks north of the roadblock and turned left again approximately two blocks later. Persing then stopped Thill, after his car was again heading in the direction of the roadblock.

Pursuant to the stop, Persing observed Thill's physical appearance and administered field sobriety tests. Based upon his observations, Persing placed Thill under arrest. After questioning Thill, Persing transported him to the Public Safety Building, where Thill agreed to take an intoxilizer test. He was then charged with DWI.

Before trial, Thill moved to suppress his arrest and the evidence obtained pursuant to it, arguing that Officer Persing had no reasonable basis to stop him. Persing's sole reason for stopping Thill's vehicle was the fact he had turned prior to going through the roadblock. Persing observed no moving violations or erratic driving by Thill. The trial court denied the motion to suppress and the case proceeded to trial.

The magistrate judge found Thill guilty of DWI. Thill appealed his conviction to circuit court, which affirmed the judgment of the magistrate. Thill appeals to this court and raises a single issue: whether

Officer Persing had sufficient cause to stop Thill's automobile.

■ Stopping an automobile and detaining its occupants constitute a "seizure" within the meaning of the Fourth and Fourteenth Amendments of the United States Constitution. *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660, 667 (1979). At a minimum, then, law enforcement must have an articulable and reasonable suspicion that the motorist is subject to seizure for violation of the law before the stop occurs. *Id.* at 663, 99 S.Ct. at 1401, 59 L.Ed.2d at 673. *See also United States v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

In *State v. Anderson,* 331 N.W.2d 568 (S.D.1983), we extended the reasonable suspicion standard to automobile stops in this state.

It is well settled that in accordance with the Fourth Amendment of the United States Constitution a police officer may not stop a vehicle without a reasonable basis for doing so. Consistent with the principles set out in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), *the officer must have a specific and articulable suspicion of a violation before the stop will be justified.*

*Id.* at 570 (*citing Marben v. State, Dept. of Public Safety,* 294 N.W.2d 697, 699 (Minn. 1980) (emphasis added)). We more precisely defined the reasonable suspicion standard:

It should be emphasized that the factual basis required to support a stop for a "routine traffic check" is minimal.... All that is required is that the stop be

not the product of mere whim, caprice, or idle curiosity. It is enough if the stop is based upon "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion[.]"

*Anderson,* 331 N.W.2d at 570 (*citing People v. Ingle,* 36 N.Y.2d 413, 420, 369 N.Y.S.2d 67, 74, 330 N.E.2d 39, 44 (1975)). *Accord State v. Anderson,* 359 N.W.2d 887 (S.D.1984).

Whether the avoidance of a roadblock constitutes reasonable suspicion to stop a motorist is an issue which has been addressed in several jurisdictions, with mixed results. At least five jurisdictions hold that a driver's effort to avoid a roadblock is alone sufficient to raise an articulable and reasonable suspicion of criminal wrongdoing, supporting an investigatory stop. *See Synder v. State,* 538 N.E.2d 961 (Ind.App. 4th Dist.1989); *Stroud v. Commonwealth,* 6 Va.App. 633, 370 S.E.2d 721 (1988); *Boches v. State,* 506 So.2d 254 (Miss.1987); *Smith v. State,* 515 So.2d 149 (Ala.Crim. App.1987); *Coffman v. State,* 26 Ark.App. 45, 759 S.W.2d 573 (1988). However, at least two jurisdictions have explicitly rejected this position. *State v. Talbot,* 792 P.2d 489 (Utah App.1990); *Pooler v. Motor Vehicles Div.,* 88 Or.App. 475, 746 P.2d 716 (1987), *aff'd* 306 Or. 47, 755 P.2d 701 (1988).

In *Talbot,* 792 P.2d at 493–94, the Utah Court of Appeals examined this issue in the context of avoiding confrontation with the police. The court acknowledged the majority rule that the mere act of avoiding confrontation with the police does not create an articulable suspicion supporting a stop.* The court reasoned that if a person may

---

* The court cited the following authority:

*People v. Thomas,* 660 P.2d 1272, 1276 (Colo. 1983) (en banc) ("[A]n effort to avoid police contact, by itself, is insufficient to support a stop."), *overruling People v. Waits,* 196 Colo. 35, 580 P.2d 391, 393 (1978) (en banc); *In re D.J.,* 532 A.2d 138, 141 (D.C.1987) (Defendant "merely attempted to walk away, behavior indicative simply of a desire not to talk to police. No adverse inference may be drawn from such a desire."); *McClain v. State,* 408 So.2d 721, 722 (Fla.Dist.Ct.App.1982) (Defendant's "behavior which, taken for its most insidious implications, indicated only that he wanted to avoid police, could not give rise to

a reasonable suspicion that he was engaged in criminal activity."); *People v. Fox,* 97 Ill. App.3d 58, 52 Ill.Dec. 219, 223, 421 N.E.2d 1082, 1086 (1981) ("[T]he mere fact that the vehicle drove away at the approach of a squad car does not serve as a justifiable basis for conducting a *Terry* stop."); ... *People v. Shabaz,* 424 Mich. 42, 378 N.W.2d 451, 460 (1985) (Flight "does not alone supply the particularized, reasoned, articulable basis to conclude that criminal activity [is] afoot."). *But see United States v. Pope,* 561 F.2d 663, 669 (6th Cir.1977) (flight "may furnish sufficient ground for a limited investigative stop"). *Talbot,* 792 P.2d at 494.

avoid or ignore an officer when approached on the street, a person should also be able to avoid a confrontation at a roadblock. *Id.* at 494.

█ Notwithstanding the general freedom to avoid police confrontation, we find the avoidance of the police roadblock in this instance was sufficient to create an articulable and reasonable suspicion of criminal activity. Automobiles and their use on state roads are the subject of significant state regulation (e.g. licensing, registration). This fact distinguishes the cases relied upon in *Talbot*, the majority of which involved pedestrians. And while people are not shorn of their Fourth Amendment protection when they step from the sidewalks into their automobiles, *Prouse*, 440 U.S. at 663, 99 S.Ct. at 1401, 59 L.Ed.2d at 673, their actions on the road become subject to increased state regulation and restriction. Consequently, actions taken on the road, the character of which would be innocent in another context, may well give rise to an articulable and reasonable suspicion of a violation of the law respecting the use or ownership of an automobile.

Thill's turnabout at the entrance of the roadblock and his subsequent circuitous route constituted a reasonable suspicion that Thill was in violation of the law respecting the use or ownership of an automobile. The subsequent stop of Thill's vehicle was therefore lawful. Such a conclusion is consonant with the majority of jurisdictions which have addressed this issue. We affirm.

MILLER, C.J., and AMUNDSON, J., concur.

HENDERSON and SABERS, JJ., dissent.

HENDERSON, Justice (dissenting).

I join the dissent of Justice Sabers.

In doing so, it is noted that the dissent is supported by the majority viewpoint in the United States. *State v. Talbot*, 792 P.2d 489 (Utah 1990). Via the majority opinion,

South Dakota adopts the minority viewpoint.

In this factual scenario, Thill made a lawful left hand turn. Arresting officer Persing testified that he was 150 yards from Thill's vehicle when it made a left hand turn. There is no doubt—no question at all—that Persing's only reason for later pursuing, stopping, and seizing the Thill vehicle was the fact that Thill turned before going through the roadblock. It is undisputed that Thill demonstrated no criminal behavior, no erratic driving behavior, no moving violations as he proceeded to the roadblock or away from it.

Therefore, there was absolutely no specific and articulable suspicion of a violation before the stop. *State v. Anderson*, 331 N.W.2d 568 (S.D.1983). By this decision, South Dakota adopts the rule that the act of avoiding a roadblock—by itself—creates an articulable suspicion of some type of criminal activity.[1] In this train of reasoning, the majority opinion is in error on both of its propositions, the one of fact, the other of constitutional law, and its conclusion withers.

Under questioning at oral argument by this writer, it was admitted by the Assistant Attorney General that (a) there is no statute in this state forbidding the avoidance of a roadblock and (b) Thill never got into the lane of cones which channeled the traffic to Officer Persing's roadblock.

We have, before us, another erosion of the requirement of only *minimal intrusion*. *Minimal intrusion* is employed as a legal theory to justify the very existence of a roadblock. I hearken unto this proposition: the United States Supreme Court has authorized motorist checkpoints upon the basis that there is a *minimal intrusion on motorists* and *minimal discretion of officers*. *Michigan v. Sitz*, 496 U.S. ——, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990). It appears to me that, in South Dakota, we will permit maximum intrusions upon motorists and grant maximum discretion to officers.

---

1. There is no evidence that he actually avoided the roadblock. He made a left turn some 450 feet away from it.

It is extremely difficult to understand the nature and consequences of statism (state exalted; rights of people demoted) in its myriad disguises. Here, it is not difficult to see: statism simply prevails as a judicial philosophy. Everything we as humans think, everything we do, everything we write, everything we decide, every principle we advance is founded upon a philosophical concept. This underlying truth holds fast not only in the field of medicine, social and political systems, but also within the search for justice. These fields are anything but exact sciences.

All of us, in our exercise of free will, make a decision as to that which we honestly believe is the apparent truth and is, to us, the most appealing at the moment. We do it or say it or write it within our own perception of ethics and the Law. Unquestionably, as decades and time rolls by, each individual arrives at a decision by what truths, as he sees truth, he will fasten upon.

I would attach myself to the spirit of the Fourth Amendment to the United States Constitution. It has prescribed a security which, by the action of this Court today, would be "seriously circumscribed," a phrase set forth in *Delaware v. Prouse*, a case cited by Justice Sabers. Essentially, the Fourth Amendment is a limitation on governmental power—a control, if you will. Our government is one of enumerated powers. Those powers vested in the government are granted by the people through expressions in the Constitution. When you start hemming in that control, the power of the State is extended in a manner which the people did not intend. In this case, my brothers, in a sense, are putting a control on the control.

State maintains Thill's turn was "evasive." Thus, it concludes there exists "articulable suspicion." Such rationale has been expressly rejected in *Murphy v. Commonwealth*, 384 S.E.2d 125, 128 (1989); *Pooler v. Motor Vehicles Division*, 88 Or. App. 475, 746 P.2d 716 (1987), aff'd., 306

Or. 47, 755 P.2d 701 (1988). Both cases are right on point, both holding that a legal turn (the identical situation at hand) does not constitute a suspicion of criminal activity.

Generations come and go. So do civilizations. The pillars of liberty (to include stepping into and driving an automobile) rise and fall depending upon vigilance. A great civilization fell—the Roman Empire. Why? What happened to the truths, as men perceived them? [2]

A "hunch", we decide today, is enough to stop and seize an automobile. This slender reed is too tenuous for my constitutional application. Objectivity flies away. And with it, unfortunately, so do the protections which the Fourth Amendment grants: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures . . ."

SABERS, Justice (dissenting).

I dissent. While a traffic stop may not require probable cause, it does require "at least articulable and reasonable suspicion" of a violation of the law. *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979); *State v. Anderson*, 331 N.W.2d 568, 570 (S.D.1983). This means something more than "mere . . . idle curiosity" about the driver. *Anderson, supra* (quoting *People v. Ingle*, 36 N.Y.2d 413, 420, 369 N.Y.S.2d 67, 74, 330 N.E.2d 39, 44 (1975)).

Here, as the majority opinion concedes, the officer "observed no moving violations or erratic driving by Thill." The officer's "sole reason for stopping Thill's vehicle was the fact he had turned prior to going through the roadblock."

There is no law against executing a lawful turn before reaching a roadblock, even if the purpose of the turn is avoidance. In fact, part of the reason that stationary checkpoints are constitutional and "random roving-patrol stops" are not is that station-

---

**2.** An early patriot, Thomas Paine, wrote: "Those who expect to reap the blessings of freedom must undergo the fatigue of supporting it." Freedom isn't free. And therein lie the obligation of men to preserve it.

ary checkpoints provide advance notice of their presence to approaching motorists, giving them the "option ... to avoid the checkpoints." *United States v. Martinez–Fuerte,* 428 U.S. 543, 558, 96 S.Ct. 3074, 3083, 49 L.Ed.2d 1116 (1976); *Michigan v. Sitz,* 496 U.S. ——, 110 S.Ct. 2481, 2486, 110 L.Ed.2d 412 (1990).

Certainly the officer was within his rights to follow Thill after he turned away from the roadblock, but since he never did observe any illegal or even unusual behavior by Thill, he continued to have no articulable or reasonable suspicion that Thill was doing anything wrong.

The majority opinion strains to suggest otherwise. Saying that the officer had a "reasonable suspicion" does not make it so. The officer must be able to articulate something about a defendant's behavior *before making the stop* which reasonably leads the officer to suspect a specific crime may have been committed. Nothing of the sort happened here.

Thill's vehicle was seized unreasonably in violation of U.S. Const. amend. IV and South Dakota Const. art. VI, § 11. Therefore, I respectfully dissent.