Dale William GRAF, Petitioner
and Appellant,

v.

STATE of South Dakota, DEPARTMENT
OF COMMERCE AND REGULATION,
Appellee.

No. 18049.

Supreme Court of South Dakota.

Considered on Briefs on Feb. 10, 1993.

Reassigned Aug. 24, 1993.

Decided Nov. 17, 1993.

Steven R. Binger, Sioux Falls, for petitioner and appellant.

Mark Barnett, Atty. Gen., Gary R. Campbell, Asst. Atty. Gen., Pierre, for appellee.

WUEST, Justice (on reassignment)

Dale William Graf (Graf) appeals from a judgment revoking his driver's license for one year. We reverse.

FACTS

At 7:00 p.m. on January 17, 1992, Sioux Falls Police Officer Gregory Schmit (Officer Schmit) received a radio dispatch that an anonymous citizen reported a possible drunk driver in a large brown car with license "1E3312" travelling west on 10th Street. The dispatch advised Officer Schmit that a computer check indicated that Graf, who resided at 1608 West 39th Street, was the registered owner of the vehicle.

Officer Schmit proceeded to the area of Graf's residence. After waiting at the corner of 39th Street and Lake for thirty-four minutes, Officer Schmit saw Graf turn in front of him. He followed Graf's vehicle to the Graf residence a half a block away. He did not observe any traffic violations or erratic driving by Graf. Officer Schmit parked his car in a position which blocked Graf's automobile in the driveway. Following sobriety testing Graf was arrested for driving under the influence of alcohol.

The Department of Commerce and Regulation revoked Graf's driver's license because of his refusal to submit to a chemical analysis. SDCL 32–23–11. Following a trial de novo the circuit court concluded:

Officer Schmit had a reasonable suspicion to stop the vehicle driven by Dale W. Graf because he had received a call from dispatch that the driver may be under the influence, and the stop was not the product of mere whim or idle curiosity, but was the product of specific and articulable facts

which, when taken together with rational inferences from those facts reasonably warranted the intrusion, State v. Kissner, 390 N.W.2d 58 (S.D.1986).

## ISSUE

### WHETHER THE INFORMATION PROVIDED BY AN ANONYMOUS CITIZEN WAS SUFFICIENT TO CREATE A REASONABLE SUSPICION TO JUSTIFY THE STOP?

■ The reasonable suspicion standard was extended to automobile stops in South Dakota in *State v. Anderson*, 331 N.W.2d 568 (S.D.1983). A police officer must have a specific and articulable suspicion of a violation before a stop will be justified. *Id.* The factual basis required to support the stop is:

[T]hat the stop be not the product of mere whim, caprice, or idle curiosity It is enough if the stop is based upon "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion[.]"

*Anderson*, 331 N.W.2d at 570, (quoting *People v. Ingle*, 36 N.Y.2d 413, 369 N.Y.S.2d 67, 330 N.E.2d 39, 44 (1975)).

The United States Supreme Court has ruled that reasonable cause for a stop need not be based upon an officer's personal observations; the factual basis for the stop may be supplied by information acquired from another person. *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). *See also United States v. Aldridge*, 719 F.2d 368 (11th Cir.1983), and *Marben v. State, Dept. of Public Safety*, 294 N.W.2d 697 (Minn.1980). In addition, this court has stated that a stop may be justified even though the officer did not witness any violations. *See Anderson, supra; State v. Johnson*, 320 N.W.2d 142 (S.D. 1982).

*State v. Kissner*, 390 N.W.2d 58, 60 (S.D. 1986).

■ Information provided by an anonymous telephone tip may be sufficiently reliable to justify a vehicle stop. *State v. Lownes*, 499 N.W.2d 896, 899 (S.D.1993). The United States Supreme Court has cautioned, however:

Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause. *Adams v. Williams, supra*, demonstrates as much. We there assumed that the unverified tip from the known informant might not have been reliable enough to establish probable cause, but nevertheless found it sufficiently reliable to justify a Terry stop. 407 U.S. at 147, 32 L.Ed.2d 612, 92 S.Ct. at 1923–24. *Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors—quantity and quality— are considered in the "totality of the circumstances—the whole picture,"* United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981), *that must be taken into account when evaluating whether there is reasonable suspicion. Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable.*

Alabama v. White, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301, 309 (1990) (emphasis added).

We have examined the question of whether information provided to police by an anonymous private citizen has a sufficient degree of reliability to create a reasonable suspicion of a violation and justify a vehicle stop in *Kissner*, 390 N.W.2d at 58, *State v. Czmowski*, 393 N.W.2d 72 (S.D.1986), and *Lownes*, 499 N.W.2d at 896.

In *Kissner*, a private citizen reported that the driver of a Chevrolet station wagon with Arizona license plates appeared to be driving in an intoxicated manner. The citizen also reported that the vehicle contained two males and was at a specific gas station in Pierre. A police officer observed the vehicle at the station, watched it drive away, and stopped it

within three blocks even though the officer did not observe any traffic violations. We held:

> In the present case, the officer received specific information from a private citizen about a suspected violation of the law, including a description of the vehicle, its license plates, the number of occupants, and the vehicle's location. The officer was able to verify this information when he arrived at the location. Under such circumstances, a report from a private citizen is clearly sufficient to create a reasonable suspicion of a violation; it was not necessary for the officer to observe erratic driving or a traffic violation.

*Kissner*, 390 N.W.2d at 60.

In *Czmowski*, an anonymous caller reported that he followed a possible drunk driver who weaved all over interstate highway I–90. The caller described the vehicle, gave its license plate number, and reported that the car had just gone past Sturgis. A highway patrolman radioed this information to the port-of-entry officer outside of Sturgis. This officer did not notice anything unusual about the defendant's driving, but detained the defendant until the patrolman arrived. We held:

> Viewed collectively, the anonymous first hand report that a possible drunk driver was "weaving all over the road" was corroborated by the location of the vehicle a very short time after it had been reported in Sturgis; additional corroboration was provided by the vehicle's description, including its license plate number. These details were similar to the corroborative details reported in *Aldridge, supra.*
>
> Although Dodd [port-of-entry operator] did not have personal knowledge of defendant's driving, when all the facts were viewed together, they provided a specific and articulable suspicion upon which Dodd could detain defendant and Hindman [highway patrolman] could further investigate defendant's ability to operate his vehicle.

*Czmowski*, 393 N.W.2d at 74.

In *Lownes*, there existed adequate reasonable suspicion to justify a stop where:

> Trooper Welch received specific information relayed from a concerned citizen about a suspected violation of the law. The information included a description of a distinct motorcycle, the name of the driver, the location the motorcycle left from, a direction and highway route for the motorcycle, the particular exit the bike would use to exit the highway and a specific street destination. When the officer looked for a motorcycle matching the given description, driven by a man, proceeding down the indicated highway in the direction predicted—he found it. After Trooper Welch verified significant aspects of the information, there existed adequate reasonable suspicion to justify a *Terry* stop.

499 N.W.2d at 900.

■ In Graf's case, there was little content to the anonymous tip that served as the basis for the stop. The anonymous caller gave the license number of the car and said that the driver was "possibly" intoxicated. The caller also told police that the vehicle was being driven westbound on 10th Street in Sioux Falls. The caller described no erratic driving. No attempt was made to verify the information by locating the car on 10th Street; Officer Schmit simply went to the vicinity of Graf's home after running a check on the plates. After waiting for over one-half hour, the officer observed Graf's vehicle heading home, pulled out behind Graf, and turned on his red lights. Officer Schmit did not observe any erratic driving on Graf's part. The only facts corroborated by the police were that Graf owned a brown automobile with the given license plate number.

While the anonymous report of a private citizen may be sufficient to create reasonable suspicion for a stop, the facts of this case are in sharp contrast to the *Kissner, Czmowski,* and *Lownes* cases where anonymous telephone callers described specific facts concerning driving conduct and gave detailed information which substantiated the tip and gave it greater reliability. *Alabama v. White.* Here, the only facts supplied were a license number, general location of the vehicle, and a statement that the driver might "possibly" be drunk. No attempt was made

to verify the location of the vehicle. The requirement of specific and articulable facts was simply not met.

The judgment is reversed.

HENDERSON, J., concurs with writing.

AMUNDSON, J., concurs.

MILLER, C.J., and SABERS, J., dissent.

HENDERSON, Justice (concurring).

An appellate court should recognize that a false step, ofttimes, is never retrieved. Thus, its opinions should be tempered with caution on extensions of judge-made law which erode the Bill of Rights.

In joining Justice Wuest's writing, it is my intent to augment it, not quarrel with the cases cited nor its rationale.

*Czmowski* and *Kissner*, cited by the majority, are decisions, which like a child unto its mother, are unto *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). In *White*, the United States Supreme Court considered the validity of an anonymous tip. This is what we have before us—an anonymous tip. Therein, criteria was established for the validity of an anonymous tip:

> Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors—quantity and quality—are considered in the 'totality of the circumstances—the whole picture,' (Citation omitted) that must be taken into account when evaluating whether there is reasonable suspicion. *Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable.* (emphasis added).

*Alabama v. White*, 496 U.S. at 330, 110 S.Ct. at 2416.

1. Defendant, said tipster, was weaving all over the highway.

2. Defendant, said tipster, *appeared to be driving in an intoxicated manner.* Compare that *factual* statement to a *conclusion* (in this case) of a

As Justice Wuest has pointed out, there is a low degree of reliability of the anonymous tip in the case at hand.

Low degree of reliability? Why? Consider *Czmowski*. There the tipster followed the vehicle down the interstate and observed specific driving conduct which warranted a conclusion. In *Kissner*, the tipster could verify and did verify the Arizona license plates, expressed that the vehicle contained two males and was stopped at a certain gas station in the capital city of Pierre, and *explained that the Chevrolet stationwagon was being operated in an intoxicated manner*, whereupon the police officer located the vehicle containing two occupants. We must remember that the U.S. Supreme Court case of *Alabama v. White* was decided approximately four years *after Czmowski* and *Kissner*. Conclusory expressions do not feed the bulldog under the state of the law and rationale as expressed in *Czmowski*[1], *Kissner*[2], and *State v. Anderson*, 331 N.W.2d 568 (S.D. 1983). Conclusions are not facts. And they are certainly not "articulable facts." In this case, we have a general conclusion, if not an equivocal conclusion. Here, the officer did not verify the tip by trying to find the vehicle on 10th Street, rather the police went to Graf's home and arrested him there. This occurred after (approximately) a one-half hour "stakeout." The arresting officer had absolutely no articulable facts that Graf was intoxicated or that Graf had ever been driving a vehicle on 10th Street. Also, the caller expressed it was *a possible under the influence driver*.

This scenario may be crystallized into an anonymous tip employing a 911 telephone number, a wait at the defendant's home, an arrest, and a violation of the Fourth Amendment's mandate against unreasonable intrusions. People have the constitutional right to be secure in their persons, houses, papers, and effects. In point of fact, *the officer admitted he saw no erratic driving* and entered Graf's home (with permission of Graf's

"possible under the influence driver"; officer went to service station, saw defendant drive and then arrested him. There was an immediate verification. Here, the verification was slightly over one-half hour after the call-in tip.

mother); the officer went so far as to block these citizens' private driveway.

When *Anderson* was decided, this author's special writing feared the adoption of a Minnesota case cited therein. If, indeed, *articulable facts* are required, *conclusions* do not satisfy such a rule. *Anderson,* decided in 1984, went too far. Were we to follow the dissent of Justice Sabers, this case, a progenitor of *Anderson,* would extend our holding in *Anderson* beyond all fair inference.

It is true that an informant's tip may vary, by measure, in value and reliability. Each case must be decided for reliability upon its own set of facts. *See Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). In South Dakota, we should not countenance an anonymous tip on the 911 line, without articulable facts, as a basis for a reasonable suspicion for a stop. Neither the tipster nor the officer expressed there was erratic driving or a traffic violation. "Was westbound on 10th street," "in a large brown automobile," "license plate 1E3312" are statements which are factually oriented; but none of them relate to weaving, crossing the center line, erratic driving, illegal driving, or conduct upon which to base a reasonable suspicion to justify a stop. "A *possible* under the influence driver" (emphasis supplied mine) is a conclusion and is not factually oriented. If we embark upon arrests and seizures, based upon anonymous tips of "a possible under the influence driver," without factual support of a misdeed violation, every citizen is subject to immediate stop—at the whim of any officer. We would become a police state, no different than many foreign countries. Our Constitution must not become illusory or rendered meaningless. The Fourth Amendment commands: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures ..." This provision of our Constitution brought into existence public acknowledgment of a free society regarding *persons, houses, papers,* and *effects.*[3] In effect, four freedoms, all contained within the Fourth Amendment. If language in that amendment of freedom is to mirror reality, an amendment paid for with the blood of our forefathers, let us instill integrity within its spirit and not make it fragile.

SABERS, Justice (dissenting).

The sole issue is whether the "anonymous tip," independently corroborated in part, provided an articulable reason to stop defendant's vehicle. The trial court found that it did and I am inclined to agree.

The State argues that:

Schmit was informed, in the message he received, that a "possible" drunk driver was westbound on 10th Street in a large brown automobile identified by license plate 1E3312. A radio dispatch containing this information alone is sufficient to provide reasonable suspicion to stop a motorist. *See Philpott v. State,* [194 Ga.App. 452] 390 S.E.2d 664, 665 (Ga.App.1990). The information in the message was significantly corroborated when Schmit encountered Graf, who was driving the described vehicle with the described license plates, approximately half an hour later in the vicinity of Graf's home. The location of Graf's home, approximately twenty blocks from the road on which he was initially reported to be travelling, was ascertained from records of the license plate reported by the caller. Schmit's actions, combined with independent police action in the form of the registration check, corroborated significant facts from the anonymous tip, and, in the Department's view, rendered the stop reasonable, for independent corroboration of some significant details of an anonymous informer's tip imparts some degree of reliability to other allegations

**3.** We should not adopt the State's position, for to do so would be to endanger the freedoms found within the Fourth Amendment. History teaches us that the Tories would go to the homes of people at night and search their houses. Often, this was accompanied by force. Fear would abide. Based upon an anonymous tip, were we to adopt the State's position, a simple phone call to 911 could be filed and, based upon knowledge that this person was driving home, an officer could wait near the person's home and effectuate a stop. It could well be a party bearing a grudge. Then, as here, the driveway could be blocked and an elderly person could be routed out of bed thereby allowing the police to gain entrance into a home.

made by the caller. *Alabama v. White*, 496 U.S. 325, 331–2 [110 S.Ct. 2412, 2416–7, 110 L.Ed.2d 301] (1990). As in *Czmowski*, [393 N.W.2d 72 (S.D.1986) ], the police acted immediately and verified specific information in the anonymous call.

The articulable reason to stop seems clear. An anonymous tip that:

1. a possible drunk driver;
2. was westbound on 10th Street;
3. in a large brown automobile;
4. identified by license plate 1E3312.

Items 3 and 4 were independently corroborated by records checked before the stop. There is no showing that this was a grudge tip or telephone call. Do the officers have to assume bad faith on the part of the anonymous tipster? I think not. Although the factual basis for the stop was slim, it was an "articulable reason," and not shown to be pretextual or in bad faith as the majority presumes. *See State v. Thill*, 474 N.W.2d 86, 87 (S.D.1991). ("It is enough if the stop is based upon 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion.' ")

This is a far more "articulable reason" to stop than existed in *Thill*, and was "not the product of mere whim, caprice, or idle curiosity." *Id.* (citations omitted). By a 3–2 majority, this court in *Thill* held there was an articulable reason to stop even though there was no tip off, no driving violation, no deviation, and no reason whatsoever to stop except that Thill lawfully turned around in a driveway prior to a roadblock. Although I dissented in *Thill*, and continue to believe that it was wrongly decided, I cannot vote for such inconsistency. The majority is overruling *Thill* and should say so, even if it is too late to help Thill.

Accordingly, I dissent.

MILLER, C.J., joins this dissent.