#27162-r-DG

**2015 S.D. 37**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

DAVID A. WALTER,                    Defendant and Appellant.


* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE CRAIG A. PFEIFLE
Judge

* * * *

MARTY J. JACKLEY
Attorney General

JARED TIDEMANN
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
                               and appellee.


BRYAN T. ANDERSEN
Pennington County Public
 Defender's Office
Rapid City, South Dakota                    Attorneys for defendant and
                               appellant.

* * * *

CONSIDERED ON BRIEFS ON
MARCH 23, 2015
OPINION FILED **05/27/15**

#27162

GILBERTSON, Chief Justice

[¶1.]		David A. Walter appeals from a final judgment of conviction for possession of a controlled substance (methamphetamine). Walter asserts the circuit court erred in denying his motion to suppress drug evidence obtained during a "stop and frisk" initiated by a Rapid City police officer. According to Walter, the officer lacked a reasonable basis to conclude Walter had committed a crime. We reverse.

**Facts and Procedural History**

[¶2.]		The parties stipulated the relevant facts of this appeal. On October 1, 2013, at approximately 6:15 p.m., Rapid City Police Officer Dale Ackland was dispatched to Roosevelt Park to investigate reports of a panhandler near the ice arena.[1] Officer Ackland received a detailed description of the alleged panhandler, including his clothing and direction of travel. After Officer Ackland arrived at the described location, he immediately identified Walter as matching the provided description. Walter stood alone on a sidewalk to the north of the arena.

[¶3.]		After making contact with Walter, Officer Ackland noticed a bulge in Walter's front left pocket. Concerned that Walter might have a weapon, Officer Ackland informed Walter that he intended to pat him down. Before Officer Ackland conducted the frisk, Walter said, "You can't frisk me. I have needles on me."[2]

---

1.	The reliability of the tip is not disputed.

2.	In ruling on Walter's motion to suppress evidence gathered by Officer Ackland in his search of Walter's person, the circuit court found that "Officer Ackland testified . . . that Defendant said 'you can't frisk me, I have needles on me' *while* Ackland was patting him down." (Emphasis added.) A review of Officer Ackland's testimony reveals no such statement. Even if Officer Ackland had so testified at the motion hearing, however, the parties

(continued . . .)

During the frisk, Officer Ackland observed an open bottle of liquor in one of Walter's pockets. When Officer Ackland grabbed the bottle, he felt Walter pull away and attempt to manipulate an object out of another pocket. A red box fell to the ground, which contained two syringes. Officer Ackland performed a field test, and one of the syringes tested positive for methamphetamine.[3] Thereafter, Officer Ackland administered a preliminary breath test and arrested Walter for consuming alcohol in public.

[¶4.] On October 2, 2013, Walter was charged with one count of possession of a controlled drug or substance in violation of SDCL 22-42-5 and one count of consuming alcohol in public in violation of SDCL 35-1-5.3. Walter was indicted and later arraigned on April 10, 2014.[4] The State also filed—but later dismissed—a habitual criminal information alleging Walter had a prior conviction in Wyoming for larceny in 2013. Walter moved to suppress the methamphetamine evidence, alleging Officer Ackland "did not have a reasonable suspicion of criminal activity to warrant the investigatory stop and frisk[.]" The circuit court denied the motion,

---

(. . . continued)
stipulated for trial "[t]hat Officer Ackland informed the Defendant that *he was going to* quickly pat him down for weapons, due to officer safety." (Emphasis added.) The parties also stipulated "[t]hat the Defendant *responded* 'you can't frisk me because I have needles on me.'" (Emphasis added.) Therefore, the parties do not dispute that Officer Ackland's statement of intent to search Walter preceded Walter's announcement that he had needles on his person.

3. Subsequent testing by Richard Wold, a forensic examiner with the Rapid City Police Department, confirmed both syringes contained methamphetamine residue.

4. Walter failed to appear at his first arraignment on November 14, 2013.

and the parties proceeded with a court trial on June 9, 2014. Among other things, Walter stipulated that he had syringes on his person containing methamphetamine when Officer Ackland conducted the frisk. The circuit court found beyond a reasonable doubt that Walter was guilty of possessing methamphetamine in violation of SDCL 22-42-5 and sentenced him to three years imprisonment. However, the court suspended all three years on the condition that Walter successfully complete probation and abide by other restrictions.

[¶5.] Walter appeals, raising one issue: Whether Officer Ackland had a reasonable suspicion to stop and frisk Walter.

**Standard of Review**

[¶6.] "We traditionally review a [circuit] court's decision to suppress evidence under an abuse of discretion standard." *State v. Muller*, 2005 S.D. 66, ¶ 12, 698 N.W.2d 285, 288. However, "[t]he Fourth Amendment demonstrates a 'strong preference for searches conducted pursuant to a warrant[.]'" *Ornelas v. United States*, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d 911 (1996) (quoting *Illinois v. Gates*, 462 U.S. 213, 236, 103 S. Ct. 2317, 2331, 76 L. Ed. 2d 527 (1983)). Because "the police are more likely to use the warrant process if the scrutiny applied to a magistrate's probable-cause determination to issue a warrant is less than that for warrantless searches[,]" *id.*, we review a motion to suppress evidence obtained in the absence of a warrant de novo, *see State v. Stanga*, 2000 S.D. 129, ¶ 8, 617 N.W.2d 486, 488 (citing *Ornelas*, 517 U.S. at 699, 116 S. Ct. at

1663).[5] Thus, we review the circuit court's factual findings for clear error but "give no deference to the circuit court's conclusions of law[.]" *Gartner v. Temple*, 2014 S.D. 74, ¶ 8, 855 N.W.2d 846, 850.

**Analysis and Decision**

[¶7.] "The Fourth Amendment of the United States Constitution and Article VI, § 11 of the South Dakota Constitution protect individuals from unreasonable searches and seizures." *State v. Burkett*, 2014 S.D. 38, ¶ 44, 849 N.W.2d 624, 635. This protection generally requires "that the police must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure[.]" *Terry v. Ohio*, 392 U.S. 1, 20, 88 S. Ct. 1868, 1879, 20 L. Ed. 2d 889 (1968). However, "when a person is subject to an 'investigative detention' rather than a full-blown custodial arrest, the officer need only have reasonable suspicion for the detention rather than the probable cause typically required." *State v. De La Rosa*, 2003 S.D. 18, ¶ 7, 657 N.W.2d 683, 686 (citing *Terry*, 392 U.S. at 30, 88 S. Ct. at 1884-85). Although "[t]he factual basis needed to support an officer's reasonable

---

5.      In *State v. Stanga*, we cited *Ornelas v. United States* for the general proposition that "[o]ur review of a motion to suppress based on an alleged violation of a constitutionally protected right is a question of law examined de novo." *Stanga*, 2000 S.D. 129, ¶ 8, 617 N.W.2d at 488 (citing *Ornelas*, 517 U.S. at 699, 116 S. Ct. at 1663). We have often invoked this standard since *Stanga*. In *Ornelas*, however, the United States Supreme Court did not speak so broadly—it held only "that as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal." 517 U.S. at 699, 116 S. Ct. at 1663. The United States Court of Appeals for the Eighth Circuit has interpreted this statement to indicate, generally, that "warrantless searches . . . are reviewed de novo, and cases in which a search is conducted pursuant to a warrant . . . are given deference." *United States v. Oropesa*, 316 F.3d 762, 766 n.3 (8th Cir. 2003).

suspicion is minimal[,]" *State v. Mohr*, 2013 S.D. 94, ¶ 14, 841 N.W.2d 440, 444, an investigatory stop is justified only if the totality of the circumstances reveals "some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity[,]" *United States v. Cortez*, 449 U.S. 411, 417-18, 101 S. Ct. 690, 695, 66 L. Ed. 2d 621 (1981), *quoted in Navarette v. California*, ___ U.S. ___, 134 S. Ct. 1683, 1690, 188 L. Ed. 2d 680 (2014), or "if there are reasonable grounds to believe that person is wanted for past criminal conduct[,]" *Cortez*, 449 U.S. at 417 n.2, 101 S. Ct. at 695 n.2.

[¶8.]     Walter asserts the circuit court erred in denying his motion to suppress the methamphetamine evidence because "no evidence presented support[s] a reasonable inference . . . that a crime was taking place or about to take place[.]" In response, the State asserts the investigative detention was warranted because it "was based on a complaint that Defendant was panhandling" and Walter fit the description given to Officer Ackland. The parties did stipulate that "Officer Dale Ackland was dispatched to a call . . . in regard to a panhandler in Roosevelt park." However, "panhandling" is not necessarily a crime under either South Dakota law or the Rapid City municipal code. On the contrary, soliciting[6] is generally permitted in Rapid City—a fact the State readily asserts Officer Ackland knew[7]—it

---

6.     In this context, *soliciting* is defined as: "Asking for money or objects of value, with the intention that the money or object be transferred at that time, and at that place." Rapid City, S.D., Mun. Code § 9.08.020(A)(2) (2015).

7.     The State does not assert that Officer Ackland committed a good faith mistake of law.

#27162

is only prohibited under certain circumstances.[8] While the parties also stipulated

that the call included a detailed description of Walter, the report did not include

---

8.     Rapid City prohibits soliciting under the following circumstances:

> 1.  No person shall solicit in an aggressive manner in any public place.
>
> 2.  No person shall solicit on private or residential property without having first obtained permission from the owner or other person lawfully in possession of the property.
>
> 3.  No person shall solicit within 20 feet of any entrance or exit of any financial institution or 20 feet of any automated teller machine without the consent of the owner of the property or another person legally in possession of the facilities.
>
> 4.  No person shall solicit an operator or other occupant of a motor vehicle.
>
> 5.  No person shall solicit any operator or occupant of a motor vehicle on a public street in exchange for blocking, occupying or reserving a public parking space, or directing the operator or occupant to a public parking space.
>
> 6.  No person shall solicit while under the influence of alcohol or a controlled substance.
>
> 7.  No person shall solicit by stating that funds are needed to meet a specific need, when the solicitor has the funds to meet that need, does not intend to use funds to meet that need, or does not have that need.
>
> 8.  No person shall solicit in any public transportation vehicle or at any bus stop or in any public parking lot or structure.
>
> 9.  No person shall solicit within 6 feet of an entrance to a building.
>
> 10.  No person shall solicit within 20 feet of any pay telephone, provided that when a pay telephone is located within a telephone booth or other facility, the distance shall be measured from the entrance or exit of the telephone booth or facility.
>
> 11.  No person shall solicit anytime before sunrise or anytime after sunset.
>
> 12.  No person shall solicit within 20 feet of any public restroom facility.

Rapid City, S.D., Mun. Code § 9.08.020(B) (2015).

any information regarding the manner in which the alleged panhandling was conducted. Furthermore, the State has not asserted that Officer Ackland personally witnessed Walter exhibit any suspicious behavior. Officer Ackland testified that Walter was standing alone, on a sidewalk, not near any entrance to a public building. In essence, the State asks us to uphold the seizure and search of an individual based only on an accurate description of the "suspect's" appearance and the statement that he is engaged in activity that *might* be criminal under certain conditions, but without any claim that those conditions are actually present or any other statement of alleged fact enabling the detaining officer to infer that those conditions might be present.

[¶9.] The United States Supreme Court's Fourth Amendment jurisprudence, as well as our own, suggests the information given to Officer Ackland was not sufficient to create a reasonable suspicion of criminal activity. We have previously had occasion to discuss the Supreme Court's *Navarette* decision in *Burkett*, 2014 S.D. 38, ¶¶ 48-51, 849 N.W.2d at 636-37, and again find it relevant to the present case. In *Navarette*, the Supreme Court "considered the sufficiency of an anonymous tip to conduct a traffic stop." *Burkett*, 2014 S.D. 38, ¶ 48, 849 N.W.2d at 636. The 911 report stated: "Showing southbound Highway 1 at mile marker 88, Silver Ford 150 pickup. Plate of 8–David–94925. Ran the reporting party off the roadway and was last seen approximately five minutes ago." *Navarette*, ___ U.S. at ___, 134 S. Ct. at 1686-87 (internal quotation marks omitted). Based on this tip alone, California Highway Patrol officers located and—without observing any suspicious activity—stopped the described vehicle. While approaching the vehicle, the officers

detected the odor of marijuana, and a subsequent search of the vehicle yielded 30 pounds of the drug. *Id.* at ___, 134 S. Ct. at 1687. In upholding the traffic stop, the Supreme Court said:

> The 911 caller in this case reported more than a minor traffic infraction and more than a conclusory allegation of drunk or reckless driving. Instead, she alleged a specific and dangerous result of the driver's conduct: running another car off the highway. That conduct bears too great a resemblance to paradigmatic manifestations of drunk driving to be dismissed as an isolated example of recklessness.

*Id.* at ___, 134 S. Ct. at 1691. In contrast, the report Officer Ackland received did not even assert a minor infraction of Rapid City's solicitation ordinance.[9] To borrow the Supreme Court's language, the mere report of a panhandler is not a description of "conduct bear[ing] too great a resemblance to paradigmatic manifestations of [prohibited solicitation] to be dismissed[.]" *Cf. id.*

[¶10.] Our own decisions also support the conclusion that Officer Ackland did not have a reasonable suspicion of criminal activity. In *Graf v. South Dakota Department of Commerce & Regulation*, 508 N.W.2d 1 (S.D. 1993), we reviewed the

---

9. There is a useful analogy between panhandling and driving. While both are generally permitted, either act *may* be unlawful if conducted under particular circumstances—e.g., for panhandling: aggressively soliciting in public, soliciting after sunset and before sunrise, soliciting within six feet of a public building's entrance, etc.; e.g., for driving: driving at a speed in excess of the posted limit, driving under the influence of an intoxicant, ignoring traffic signals, etc. To decide that a report of "panhandling" alone is sufficient to give rise to a reasonable suspicion of prohibited solicitation would be akin to deciding a report of simply "driving" is sufficient to give rise to a reasonable suspicion of drunk driving—a conclusion clearly contrary to the Fourth Amendment. *See Navarette*, ___ U.S. at ___, 134 S. Ct. at 1691 (indicating even some reports of actual driving infractions like "driving without a seatbelt or slightly over the speed limit" might be insufficient to form a reasonable suspicion of drunk driving).

sufficiency of a tip to conduct a traffic stop. The tip provided the make, model, and license plate number of the defendant's vehicle, as well as a statement "that the driver was 'possibly' intoxicated." *Id.* at 3-4. However, "[t]he caller described no erratic driving[,]" nor did the officer "observe any erratic driving on [the defendant's] part." *Id.* at 3. We recognized the case was unlike other "cases where . . . callers described specific facts concerning driving conduct and gave detailed information which substantiated the tip and gave it greater reliability." *Id.* (citing *Alabama v. White*, 496 U.S. 325, 110 S. Ct. 2412, 110 L. Ed. 2d 301 (1990)). Thus, because the tip only asserted a conclusory allegation of drunk driving, and because the officer did not observe any suspicious behavior, we held "[t]he requirement of specific and articulable facts was simply not met." *Id.* at 4.

[¶11.]        Similarly, in *State v. Burkett*, we reviewed a traffic stop that resulted, in part, from a tip that provided the color, type, and license plate number of the defendant's vehicle, as well as a statement that the driver was possibly intoxicated. 2014 S.D. 38, ¶ 46 n.11, 849 N.W.2d at 636 n.11. Like *Graf*, we said the tip upon which the officer acted was "minimal, almost conclusory in nature[.]" *Burkett*, 2014 S.D. 38, ¶ 56, 849 N.W.2d at 638. However, prior to initiating the stop, the detaining officer observed the defendant stop his vehicle "in the middle of a residential street and rev[] its engine for no apparent reason." *Id.* ¶ 8, 849 N.W.2d at 626. Under the totality of the circumstances, the officer's corroboration of the tip by "a brief observation of erratic driving[,]" *id.* ¶ 56, 849 N.W.2d at 638, compensated for an otherwise anemic tip. If we consider a tip alleging necessarily criminal conduct (drunk driving) to be minimal and conclusory, then a tip alleging

generally lawful activity (panhandling) must also be considered minimal and conclusory—if not held in even less regard.

[¶12.] In *State v. Mohr*, we reviewed the detention and search of a defendant after a casino attendant triggered a duress alarm. 2013 S.D. 94, ¶ 4, 841 N.W.2d at 443. The only additional information conveyed by dispatch to the responding officers was "that the casino attendant believed the suspect from earlier robberies was in the casino, that Mohr was wearing a hat and sunglasses, and that Mohr was playing video lottery when officers arrived." *Id.* ¶ 15, 841 N.W.2d at 445. We agreed with the defendant that the attendant's phone call "did not relay any articulable facts of her firsthand observation of a crime in progress" and recognized that, "viewed in isolation, [the call] might lack the factual basis for police to have a reasonable suspicion of criminal activity." *Id.* ¶ 22, 841 N.W.2d at 447. However, as in *Burkett*, we upheld the detention and search because the officers were familiar with the circumstances of the prior robberies, the attendant was an identifiable source, and the nature of an emergency call limited the ability of the officers to investigate. *Id.* ¶¶ 18-23, 841 N.W.2d at 445-47. None of these factors are present in Walter's case.

[¶13.] The foregoing decisions make clear that a conclusory statement of lawful activity does not provide a reasonable suspicion of criminal activity without a particularized description of conduct suggesting the otherwise lawful activity is being performed in an unlawful manner. Here, the report Officer Ackland received did not articulate any facts describing illegal conduct or any conduct that would otherwise give rise to an inference of criminal activity. Officer Ackland did not

corroborate the report's conclusory assertion by personal observation of Walter. The State has not asserted Officer Ackland had any preexisting knowledge regarding Walter's particular brand of panhandling or that the area in which Officer Ackland found Walter generally suffered from prohibited solicitation. Here, unlike *Navarette, Burkett*, and *Mohr*, the totality of the circumstances upon which to find reasonable suspicion is therefore limited to the simple and conclusory report given to Officer Ackland by the dispatcher. Rather, as in *Graf*, "[t]he requirement of specific and articulable facts was simply not met." 508 N.W.2d at 4.

## Conclusion

[¶14.] Officer Ackland did not have a reasonable suspicion of criminal activity; therefore, the methamphetamine evidence was the product of an illegal search. The circuit court erred in denying Walter's motion to suppress. We reverse.

[¶15.] ZINTER, SEVERSON, WILBUR and KERN, Justices, concur.