#25968-rev & rem-SLZ

**2011 S.D. 92**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                      Plaintiff and Appellant,

    v.

SHANNA C. STARKEY,                      Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT
OF THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE WALLY EKLUND
Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

JENNIFER D. POHLMAN
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff
                                        and appellant.

ANGELA COLBATH
Rapid City, South Dakota                Attorney for defendant
                                        and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON NOVEMBER 14, 2011

OPINION FILED  **12/21/11**

#25968

ZINTER, Justice

[¶1.]        Shanna Starkey was arrested for driving under the influence of alcohol.  The stop was based on the officer's perception that Starkey was attempting to evade the police.  The circuit court suppressed the evidence, concluding that the officer lacked reasonable suspicion to justify the stop.  We reverse because, under the totality of the circumstances, Starkey's evasive driving provided reasonable suspicion that criminal activity was afoot.

*Facts and Procedural History*

[¶2.]        Around 2:00 a.m. on July 21, 2010, police officer Brian Fletcher was patrolling in downtown Rapid City.  He was stopped at a red light in the center lane of Main Street, a three lane one-way street.  Fletcher noticed Starkey's vehicle leaving a parking place behind him on Main Street.  As Starkey left the parking place, she entered the left lane of the three lane street, but she stopped in her lane of traffic and did not move forward to the intersection where Fletcher was stopped.  Even though there were no cars in front of her, Starkey remained stopped in the left lane of traffic, staying four or five car lengths behind Fletcher's patrol vehicle until the light turned green.  When the light turned, Fletcher proceeded through the intersection and Starkey proceeded to the intersection but turned left on Mount Rushmore Road.  Suspicious of Starkey's unusual stop, Fletcher decided to follow Starkey's vehicle.

[¶3.]        Because Fletcher had proceeded through the intersection, he turned left at the next two intersections to try to locate Starkey's vehicle.  Fletcher found Starkey's vehicle stopped at a stoplight, headed south on Mount Rushmore Road.

When Fletcher began to follow Starkey, she turned left onto Kansas City Street. She then drove one-half block, turned left into a church parking lot, drove through the parking lot and into an alley making what the court described as an "S" maneuver. Although Fletcher attempted to meet Starkey's vehicle at the end of the alley, she turned onto St. Joseph Street, then onto Seventh Street, and then back to Main Street, where she parked near the front of a bar near the parking space where her trip began. Fletcher pulled in behind Starkey's vehicle and turned on his patrol lights. Fletcher approached Starkey and stated: "Looks like you're doing a lot of work trying to avoid me." Fletcher also noticed evidence of alcohol consumption. Starkey was ultimately arrested for driving under the influence.

[¶4.] Starkey moved to suppress the evidence. She argued that Fletcher did not have reasonable suspicion to stop her vehicle. The circuit court suppressed, reasoning that there were no observable traffic violations. The court ruled: "I am unable to discern specific and articulable facts which taken together with rational inferences from those facts, reasonably warrant this stop. . . . There were no traffic violations that should have prompted the pursuit." In its formal findings of fact and conclusions of law, the court concluded that an objective law enforcement officer in Fletcher's position would not have concluded that "Starkey was in violation of law or that [Starkey's] actions gave rise to suspicion of illegal activity to merit the stop." This Court granted the State's motion for intermediate appeal.

*Decision*

[¶5.] "An investigatory traffic stop must be 'based on objectively reasonable and articulable suspicion that criminal activity has occurred or is occurring.'" *State*

*v. Herren*, 2010 S.D. 101, ¶ 7, 792 N.W.2d 551, 554 (citation omitted). The suspicion must be based on the totality of the circumstances, and the officer may make inferences and deductions from the information observed.

> When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." Although an officer's reliance on a mere "'hunch'" is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying the preponderance of the evidence standard.

*Id.* (quoting *United States v. Arvizu*, 534 U.S. 266, 273-74, 122 S. Ct. 744, 750, 151 L. Ed. 2d 740 (2002) (internal citations omitted)). "Our determination must be based on an objective standard that considers whether 'the facts observable to the law enforcement officer at the time of the stop entitle an officer of reasonable caution to believe the action taken was appropriate.'" *Id.* ¶ 14 (citations omitted). We review de novo the application of these constitutional standards to the undisputed facts of this case. *See State v. Wright*, 2010 S.D. 91, ¶ 8, 791 N.W.2d 791, 794.

[¶6.] The circuit court first reasoned that "[t]here were no traffic law violations that should have prompted the pursuit." There is no dispute that had Fletcher observed a traffic violation, however minor, he would have had probable cause to initiate a stop. *State v. Akuba*, 2004 S.D. 94, ¶ 16, 686 N.W.2d 406, 414.

But in order to justify an investigatory stop, an officer's suspicion need not rise to the level of probable cause that a traffic or other offense has been committed.

> Although probable cause is generally required for a search, the requisite level of suspicion necessary to effectuate the stop of a vehicle is not equivalent to probable cause necessary for an arrest or a search warrant. Law enforcement officers are only required to show a reasonable suspicion to stop an automobile. That is, an officer must have specific and articulable suspicion of a violation. Therefore, the basis needed for a traffic stop is minimal.

*State v. Lockstedt*, 2005 S.D. 47, ¶ 16, 695 N.W.2d 718, 722 (citations and internal quotation marks omitted). "While the stop may not be the product of mere whim, caprice or idle curiosity, it is enough that the stop is based upon 'specific and articulable facts which taken together with rational inferences from those facts, reasonably warrant the intrusion.'" *Id.* ¶ 17 (citations omitted). The relevant facts and inferences need only give rise to an "objectively reasonable suspicion" of a violation. *State v. Ballard*, 2000 S.D. 134, ¶ 13, 617 N.W.2d 837, 841. Therefore, the circuit court erred to the extent it reasoned that a traffic violation was necessary to pursue the stop.

[¶7.] The circuit court also concluded that "an objective law enforcement officer in Fletcher's position would not conclude [that] . . . Defendant's actions gave rise to suspicion of illegal activity to merit the stop." This conclusion is not supported by the facts and law concerning evasive conduct. Fletcher testified that he initiated the investigatory stop partly because of Starkey's evasive driving.* The

---

\* Fletcher also testified that he initiated the stop because Starkey was speeding in the alley. The circuit court found that the speeding allegation
(continued …)

court acknowledged that driving included Starkey's remaining stopped in her lane of traffic four to five car lengths behind Fletcher while he was at the stoplight. The court also acknowledged Starkey's evasive "S" maneuver and her circuitous route through downtown Rapid City that began and ended near a bar at closing time. From this, Fletcher inferred that Starkey was attempting to evade him. Indeed, the first thing Fletcher said upon approaching Starkey was "[it] looks like you're doing a lot of work trying to avoid me."

[¶8.] The circuit court erred in failing to consider that conduct designed to evade contact with the police may establish reasonable suspicion for an investigatory detention. *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S. Ct. 673, 676, 145 L. Ed. 2d 570 (2000). In *State v. Noteboom*, 2008 S.D. 114, ¶ 11, 758 N.W.2d 457, 461, we summarized the application of *Wardlow* in a case involving a vehicle that attempted to avoid the police:

> In *Illinois v. Wardlow*, the United States Supreme Court recognized that flight may be one of the factors leading law enforcement to suspect criminal activity is afoot. 528 U.S. 119, 124, 120 S. Ct. 673, 676, 145 L. Ed. 2d 570 (2000). In *Wardlow*, the defendant fled when he saw "police officers patrolling an area known for heavy narcotics trafficking." *Id*. at 121, 120 S. Ct. at 674. The officers ran after him, stopped him, and did a protective pat down search. The Court determined that, in addition to the defendant's presence in the high-crime area, his "unprovoked flight upon noticing the police" raised the officers' suspicions. *Id*. at 124, 120 S. Ct. at 676. The Court analyzed it as follows:
>
>> Headlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing but it is certainly

_____

(…continued)
was not supported by the record. We defer to that finding of fact and give the speeding allegation no consideration in our analysis.

> suggestive of such. In reviewing the propriety of an officer's conduct, courts do not have available empirical studies dealing with inferences drawn from suspicious behaviors, and we cannot reasonably demand scientific certainty from judges or law enforcement officers where none exists. Thus, the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior.
>
> *Id*. at 124-25, 120 S. Ct. at 676. Even though an individual has "a right to ignore the police and go about his business," the Court determined that "unprovoked flight" was not "going about one's business." The Court explained that officers can detain "individuals to resolve ambiguity." *Id*. at 125, 120 S. Ct. at 677 (citations omitted).

We ultimately concluded that the suspect's driving away from the police was a factor to consider in reasonable suspicion analysis. *Id*. ¶ 13.

[¶9.] More to the point, in *State v. Thill,* this Court held that a defendant's avoidance of a sobriety checkpoint constituted reasonable suspicion to initiate an investigatory stop. 474 N.W.2d 86, 88 (S.D. 1991). "Thill's turnabout at the entrance of the roadblock and his subsequent circuitous route constituted a reasonable suspicion that Thill was in violation of the law respecting the use or ownership of an automobile. The subsequent stop of Thill's vehicle was therefore lawful." *Id.*

[¶10.] The Minnesota Supreme Court also holds that reasonable suspicion may arise from evasive driving. *State v. Johnson*, 444 N.W.2d 824, 827 (Minn. 1989) (concluding that "the trooper reasonably inferred that defendant was deliberately trying to evade him and that, as a result, the trooper reasonably suspected petitioner of wrongdoing."). The *Johnson* court cautioned, however, that there is a difference between being startled by the presence of the police and an

officer's reasonable inference that the driver is deliberately trying to evade the officer.

> As we see it, the issue is partly a semantic question depending on what one means when one says that the defendant engaged in evasive conduct. On the one hand, if a driver merely appears startled at the sight of a police officer passing him and then slows down a bit and if a reasonable police officer would not infer any wrongdoing from the driver's response, then the officer does not have a particular and objective basis for suspecting the driver of criminal activity and may not stop the driver. On the other hand, if the driver's conduct is such that the officer reasonably infers that the driver is deliberately trying to evade the officer and if, as a result, a reasonable police officer would suspect the driver of criminal activity, then the officer may stop the driver.

*Id*. at 826-27. Thus, reasonable suspicion arises when the officer reasonably infers that the driver is deliberately trying to evade the officer, and as a result, a reasonable police officer would suspect the driver of criminal activity. *Id*.

[¶11.] In this case, Starkey was not involved in an isolated act in which she was merely startled. Nor was this a case where she only made one turn that avoided the officer. Starkey engaged in numerous evasive maneuvers, including a stop in her lane of traffic for no apparent reason and what the circuit court described as an "S" maneuver and travel "over nine blocks on a circuitous route through downtown Rapid City." The setting was also relevant. Location is a contributing factor to the reasonable suspicion determination. *Wardlow*, 528 U.S. at 124, 120 S. Ct. at 676. Here, the evasive conduct occurred in downtown Rapid City, near the time multiple bars were closing, and Starkey's trip began and ended near the front of one of those bars. This is an appropriate factor to be considered by

law enforcement in reasonable suspicion analysis. *See Paulson v. Comm'r of Pub. Safety*, 384 N.W.2d 244, 246 (Minn. App. 1986).

[¶12.] That Starkey's conduct may be subject to reasonable interpretations other than evasion does not alter the reasonableness of the inference drawn by Fletcher. *Johnson*, 444 N.W.2d at 827 ("While defendant's behavior may have been consistent with innocent behavior, it also reasonably caused the officer to suspect that defendant was deliberately trying to evade him."). We therefore conclude that the inference of evasive driving and wrongdoing drawn by Fletcher was objectively reasonable given the totality of Fletcher's observations. He observed Starkey engage in multiple evasive maneuvers on a circuitous route that could have led a reasonably objective officer to believe that Starkey was involved in wrongdoing and was deliberately trying to evade the officer. *See Thill,* 474 N.W.2d at 88 (holding that avoidance and a circuitous route constituted reasonable suspicion that the driver was in violation of the law respecting the use or ownership of an automobile). As the Minnesota Supreme Court observed in *Johnson*:

> Our decision, of course, should not be interpreted in any way as making it easier for police to justify stopping motor vehicles. We simply reaffirm the standard which we have followed in numerous cases: that a police officer may make a brief limited investigative stop if the officer has a particular and objective basis for suspecting the person stopped of criminal activity.

444 N.W.2d at 827.

[¶13.] Reversed and remanded for further proceedings consistent with this opinion.

[¶14.] GILBERTSON, Chief Justice, and KONENKAMP, SEVERSON, and WILBUR, Justices, concur.