#26532-a-JKK

**2013 S.D. 47**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                     Plaintiff and Appellee,

    v.

JASON R. HETT,                              Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
HARDING COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JOHN W. BASTIAN
Judge

* * * *

MARTY J. JACKLEY
Attorney General

MATT NAASZ
Assistant Attorney General
Pierre, South Dakota                        Attorneys for plaintiff
                                            and appellee.


RONDA MILLER of
Belle Fourche, South Dakota                 Attorney for defendant
                                            and appellant.


* * * *

CONSIDERED ON BRIEFS
ON MAY 20, 2013

OPINION FILED **07/03/13**

#26532

KONENKAMP, Justice

[¶1.]        Jason Hett appeals his convictions for driving under the influence of alcohol (DUI) and for an open container violation.  He argues that the circuit court erred in denying his motion to suppress evidence obtained after the stop of his vehicle because the law enforcement officer had no reasonable suspicion of a violation of law to support the stop.  We affirm, concluding that the circuit court did not err in denying the motion to suppress because the officer had a reasonable suspicion that Hett violated a statute requiring his vehicle to "be driven as nearly as practicable entirely within a single lane[.]"  SDCL 32-26-6.

**Facts and Procedural History**

[¶2.]        At 11:30 p.m. on the night of December 3, 2011, South Dakota Highway Patrol Trooper Jody Moody was patrolling in rural Harding County, heading north toward the town of Buffalo.  About three miles south of Buffalo, Trooper Moody met and observed a southbound pickup cross the fog line and drive on the shoulder of the highway.[1]  Trooper Moody turned his patrol car around, pursued the pickup, and stopped it.  On making contact with the driver, later identified as Hett, Moody detected the odor of an alcoholic beverage.

[¶3.]        Trooper Moody was quickly joined at the scene by Trooper Jonathan Deuter, another South Dakota Highway Patrol Trooper patrolling in the area. Trooper Moody turned Hett over to Trooper Deuter to investigate Hett for DUI.

---

1.    The "fog line" is the solid white line on the right hand side of the lane of travel that marks the edge of the legally drivable portion of highway.  *See generally* SDCL 32-26-5, *et seq.*

-1-

Trooper Deuter proceeded to interview Hett, to administer a series of field sobriety tests, and to have him take a preliminary breath test. The breath test indicated a result of 0.20% and, based upon that and the other results of the investigation, Trooper Deuter arrested Hett for DUI. A search was then conducted of Hett's pickup and an open can of beer was found inside. Hett was transported to the Meade County jail where blood was drawn for a blood alcohol test that later indicated a result of 0.211% by weight of alcohol in the blood.

[¶4.]     Hett was charged by information with: one count of DUI by driving or actual physical control of a vehicle while under the influence of alcohol; an alternative count of DUI by driving or actual physical control of a vehicle while having 0.08% or more by weight of alcohol in the blood; one count of not driving properly in his lane; and one count of open container. A part two habitual offender information was also filed alleging that Hett had one prior DUI conviction.

[¶5.]     Hett moved to suppress all the evidence obtained as a result of the stop of his vehicle on the basis that the State did not have sufficient cause for the stop. After an evidentiary hearing, the circuit court entered findings of fact, conclusions of law and an order denying the motion to suppress on the basis that Hett's crossing of the fog line provided reasonable suspicion of a violation of law necessary to support the stop.

[¶6.]     At his jury trial, Hett was found guilty of DUI by driving or actual physical control of a vehicle while having 0.08% or more by weight of alcohol in the blood and one count of open container. The jury acquitted Hett of the remaining charges including the lane violation. A court trial was later held on the allegations

#26532

of the part two habitual offender information, and the court adjudicated Hett guilty of second offense DUI. He was sentenced to ninety days in the county jail for the DUI with eighty days suspended on various conditions including payment of a $500 fine. In addition, Hett was fined $54 for his open container violation. He appeals.[2]

## Analysis and Decision

[¶7.] Hett contends that a "vehicle driving over the fog line when meeting a law enforcement vehicle" will not "provide law enforcement with sufficient cause to justify a traffic stop." Generally, the Constitution's Fourth Amendment prohibition against unreasonable searches and seizures applies to motor vehicle stops and law enforcement must obtain a warrant to support a stop. *Rademaker*, 2012 S.D. 28, ¶¶ 8-9, 813 N.W.2d at 176. "However, as an exception to this general rule, an officer may stop a car, without obtaining a warrant, if there is 'reasonable suspicion . . . that criminal activity may be afoot.'" *Id.* ¶ 9 (quoting *Wright*, 2010 S.D. 91, ¶ 10, 791 N.W.2d at 794). An officer's observation of "a traffic violation, however minor," provides reasonable suspicion of a violation of law sufficient to support a traffic

---

2.  Standard of review:

> A motion to suppress based on an alleged violation of a constitutionally protected right is a question of law reviewed de novo. The trial court's factual findings are reviewed under the clearly erroneous standard. Once the facts have been determined, however, the application of a legal standard to those facts is a question of law reviewed de novo. This Court will not be restricted by the trial court's legal rationale.

*State v. Rademaker*, 2012 S.D. 28, ¶ 7, 813 N.W.2d 174, 176 (quoting *State v. Wright*, 2010 S.D. 91, ¶ 8, 791 N.W.2d 791, 794).

stop.[3] *See State v. Starkey*, 2011 S.D. 92, ¶ 6, 807 N.W.2d 125, 128 (citing *State v.*

*Akuba*, 2004 S.D. 94, ¶ 16, 686 N.W.2d 406, 414). *See also State v. Lockstedt*, 2005

---

3.    In both *Wright* and *State v. Erwin*, 2013 S.D. 35, 831 N.W.2d 35 we analyzed the traffic stops using the standard of probable cause, rather than reasonable suspicion, because in both cases the officers observed a traffic violation and used that as the basis for the stop. *See Wright*, 2010 S.D. 91, ¶ 13, 791 N.W.2d at 795; *Erwin*, 2013 S.D. 35, ¶¶ 3-4, 831 N.W.2d at 66-67. In *Whren v. United States*, the Supreme Court wrote that "[a]s a general matter, the decision to stop an automobile is reasonable where the police have *probable cause* to believe that a traffic violation has occurred." 517 U.S. 806, 810, 116 S. Ct. 1769, 1772, 135 L. Ed. 2d 89 (1996)(emphasis added). But we do not believe a court is precluded from analyzing a traffic stop under the reasonable suspicion standard. The United States Courts of Appeals for a number of circuits have rejected the view that the Supreme Court's language in *Whren* was intended to change the reasonable suspicion standard for traffic stops. As analyzed by the Third Circuit in *United States v. Delfin-Colina*:

> Was the Court [by its language in *Whren*], shifting gears, now requiring "probable cause" as the predicate for a traffic stop? The consensus is to the contrary. As Judge William Fletcher has recently observed, the Second, Sixth, *Eighth*, Ninth, Tenth and Eleventh Circuits have all "construed *Whren* to require only that the police have 'reasonable suspicion' to believe that a traffic law has been broken."

464 F.3d 392, 396 (3rd Cir. 2006) (emphasis added) (quoting *United States v. Willis*, 431 F.3d 709, 723 (9th Cir. 2005) (W. Fletcher, J., dissenting) (additional citations omitted). The Eighth Circuit continues to refer to "'reasonable suspicion'" of a "'traffic violation'" as a basis for a stop. *See United States v. Beard*, 708 F.3d 1062, 1065 (8th Cir. 2013) (quoting *United States v. Washington*, 455 F.3d 824, 826 (8th Cir. 2006)). In fact, the Eighth Circuit appears to refer interchangeably to *both* reasonable suspicion *and* probable cause for traffic stops, even when the stop is based upon a traffic violation. *See United States v. Hastings*, 685 F.3d 724, 727 (8th Cir. 2012) (stating, "'a traffic stop is reasonable if it is supported by either probable cause or an articulable and reasonable suspicion that a traffic violation has occurred.") (quoting *Washington*, 455 F.3d at 826). Considering these authorities, we do not perceive the Supreme Court's decision in *Whren* as changing our settled law on reasonable suspicion to stop motor vehicles for traffic violations. Either reasonable suspicion or probable cause to believe a

(continued . . .)

S.D. 47, ¶ 17, 695 N.W.2d 718, 723 (stating that, "a traffic violation, however minor, is sufficient to justify the stop of a vehicle."). "'Therefore, the basis needed for a traffic stop is minimal.'" *Starkey*, 2011 S.D. 92, ¶ 6, 807 N.W.2d at 128 (quoting *Lockstedt*, 2005 S.D. 47, ¶ 16, 695 N.W.2d at 722).

[¶8.] Referred to as the "practicable lane statute" in some jurisdiction, *see State v. Wolfer*, 780 N.W.2d 650, 652 (N.D. 2010), South Dakota's version, SDCL 32-26-6, provides:

> On a roadway divided into lanes, a vehicle shall be driven as nearly as practicable entirely within a single lane and may not be moved from such lane until the driver has first ascertained that such movement can be made with safety. A violation of this section is a Class 2 misdemeanor.

[¶9.] The circuit court found as a fact that Trooper Moody observed a single instance where Hett's vehicle crossed over the fog line and was driven on the shoulder of the road.[4] The court reasoned that this constituted observation of a violation of SDCL 32-26-6, and when an officer "has specific and articulable facts which taken together with the rational inferences from those facts," it reasonably warranted Trooper Moody's stop of Hett's vehicle. On that basis, the circuit court denied Hett's motion to suppress. Hett argues on appeal that the circuit court erred

---

(. . . continued)
    violation occurred will support a stop. Since this case was argued before the circuit court on the basis of reasonable suspicion, was decided on that basis, and has also been argued as a reasonable suspicion case before this Court, we resolve it in those terms.

4.    Despite testimony to that effect at the suppression hearing, the circuit court declined to find that Trooper Moody also observed Hett cross over the center line because the trooper failed to testify to that observation at the earlier preliminary hearing.

in concluding that a single instance of crossing the fog line violates SDCL 32-26-6. If that were so, Hett asserts "every slow moving vehicle, wide load, or traveler that moves over to the right whether it be defensive driving or to avoid a wide load, would be in violation."

[¶10.] There is a division of authority on this issue. The State cites *United States v. Herrera Martinez*, in which the Eighth Circuit upheld a traffic stop based upon a single instance of a vehicle crossing the fog line in "violation of a South Dakota statute requiring [drivers] to stay 'as nearly as practicable' within one traffic lane."[5] 354 F.3d 932, 934 (8th Cir. 2004) *vacated on other grounds* 549 U.S. 1164, 127 S. Ct. 1125, 166 L. Ed. 2d 889 (2007). In *United States v. Carrasco-Ruiz*, the United States District Court for South Dakota relied on *Herrerra Martinez* in observing that, "in South Dakota, crossing the fog line is a violation of SDCL 32-26-6" that provides probable cause for a traffic stop.[6] 587 F. Supp. 2d 1089, 1099 (D.S.D. 2008). In *State v. Magallanes*, the Nebraska Supreme Court cited *Herrera Martinez* for the point that, "crossing [the] fog line one time [is] sufficient probable cause to stop [a] vehicle under South Dakota law." 824 N.W.2d 696, 701 (Neb. 2012). But the stop upheld in *Magallanes* was the result of two instances of crossing the fog line. *See id.* at 698. Further, the stop was made under a statute

---

5. Although SDCL 32-26-6 was not specifically identified by the majority as the statute at issue in *Herrera Martinez*, it was cited by the dissent. *See* 354 F.3d at 935 n.1 (Lay, J., dissenting).

6. The arresting officer in *Carrasco-Ruiz*, however, observed the offending pickup cross both the fog line and the center line before making the vehicle stop. *See* 587 F. Supp. 2d at 1091.

prohibiting driving on the shoulder of a highway rather than a practicable lane statute like South Dakota's. *See id.*

[¶11.]     Hett cites *United States v. Herrera-Gonzalez*, however, in that case the Eighth Circuit actually upheld a vehicle stop based upon an officer's observation of a vehicle crossing a fog line once for ten to fifteen seconds. 474 F.3d 1105, 1107 (8th Cir. 2007). The stop was made under an Iowa practicable lane statute similar to South Dakota's. *See id.* In reaching its decision, the Eighth Circuit considered a number of factors including: the duration of the crossing; the time of day; the weather conditions; whether a full lane of travel was available to the driver; and the existence of "adverse conditions that would have made it impractical for [the driver] to keep his car in the lane[.]" *Id.* at 1110-11. The weight of these factors convinced the court that the officer had a "reasonable basis to believe that a violation of the Iowa Statute had occurred," although it was "a relatively close question[.]" *Id.* at 1111.

[¶12.]     Hett relies strongly on *United States v. Freeman* in which the Sixth Circuit invalidated the traffic stop of a motor home under Tennessee's practicable lane statute where the motor home "briefly" crossed the white line separating the right-hand lane of traffic from an emergency lane. 209 F.3d 464, 466 (6th Cir. 2000). In invalidating the stop, the court observed that it could not "agree that one isolated incident of a large motor home partially weaving into the emergency lane for a few feet and an instant in time constitute[d] a failure to keep the vehicle

within a single lane 'as nearly as practicable.'" *Id*. (quoting *United States v. Gregory*, 79 F.3d 973, 978 (10th Cir. 1996)).[7]

[¶13.] In *Wolfer*, the North Dakota Supreme Court reviewed numerous divergent authorities such as those above and upheld a vehicle stop based upon a single instance of a vehicle crossing a fog line in violation of a statute nearly identical to SDCL 32-26-6. 780 N.W.2d 650. While "mindful of [the] body of law addressing [similar] issues," the court joined jurisdictions focusing their analysis "on the reasonableness of an officer's suspicion in light of the facts surrounding the stop as they reflect the practicability of maintaining a single lane of traffic." *Id*. at 652-53. Similar to the facts surrounding the stop considered by the Eighth Circuit in *Herrera-Gonzalez*, the facts considered in *Wolfer* included: the length and duration of the crossing and distance traveled outside the lane of traffic; the design of the highway, such as the existence of curves in the road; traffic conditions, such as highway congestion or vehicles braking in front of the suspect vehicle; and road conditions, such as whether the road was dry and obstruction free. *Id*. at 652. The court concluded in *Wolfer* that these facts demonstrated the "practicability of [the suspect] remaining entirely within his lane" and went on to hold that the evidence was "sufficient to support the [trial] court's conclusion [that the] arresting officer had a reasonable and articulable suspicion [that the suspect] had violated the

---

7. *Gregory*, another case relied upon by Hett, also held that a, "one-time entry into the emergency lane failed to constitute a violation of a Utah statute nearly identical to" the Tennessee provision at issue in *Freeman*. *Freeman*, 209 F.3d at 466. Although *Gregory* did not involve a motor home, it did involve a U-Haul rental truck that crossed two feet into an emergency lane. *See Gregory*, 79 F.3d at 975-76.

practicable lane statute by crossing over the fog line." *Id.* On that basis, the court upheld the vehicle stop.

[¶14.] The North Dakota court chose an analytical framework in *Wolfer* it found to be "consistent with North Dakota case law[.]" *Id.* at 653. A comparison of North Dakota case law followed in *Wolfer* with the South Dakota case law cited above on reasonable suspicion to stop vehicles and the applicable standards of review for motions to suppress evidence reflects that they are also consistent. Likewise, the North Dakota and South Dakota practicable lane statutes are consistent. And the analysis employed by the North Dakota court in *Wolfer* is consistent with that utilized by the Eighth Circuit in *Herrera-Gonzalez*. Therefore, *Wolfer* provides a good framework for resolving the issue over the propriety of the vehicle stop here.

[¶15.] As in *Wolfer*, the circuit court here "could have provided a more detailed explanation of [its] findings" on the facts surrounding the stop. 780 N.W.2d at 652. This did not inhibit review in *Wolfer*, however, where the court upheld the stop based upon "the officer's testimony and the video recording of the driving and road conditions." *Id.* (citing *State v. Schmitz*, 474 N.W.2d 249, 251 n.5 (N.D. 1991)).[8]

---

8.  This Court has followed a similar approach with abbreviated trial court findings. *See State v. Anderson*, 2000 S.D. 45, ¶ 45, n.14, 608 N.W.2d 644, 658 n.14 (holding it unnecessary to remand to the trial court for specific findings where the "'record is clear and yields an obvious answer to the relevant questions raised on appeal[.]'") (quoting *Scruggs v. State*, 484 N.W.2d 21, 25 (Minn. 1992)); *State v. Rough Surface*, 440 N.W.2d 746, 750 (S.D. 1989) (holding that remand of the case for a determination of the
(continued . . .)

[¶16.]     The circuit court's findings, Trooper Moody's testimony, and the video recording of the driving and road conditions in this case establish the following facts surrounding the stop. Trooper Moody testified the vehicle stopped was a white Ford pickup, contrasting with the unwieldy motor home in *Freeman* and U-Haul truck in *Gregory*, two of the cases relied upon by Hett. *See United States v. One Million, Thirty-Two Thousand, Nine Hundred Dollars in U.S. Currency*, 855 F. Supp. 2d 678, 695 (N.D. Ohio 2012) (distinguishing *Freeman* on the basis that it involved a "large" motor home while *One Million* involved a less "unwieldy" pickup). Trooper Moody further testified that he met the pickup at 11:30 at night and that, as he met the vehicle, it crossed over the fog line by "at least a tire width." The video recording of the driving and road conditions at the location of the crossing depict nothing more than a long, straight stretch of smooth, dry highway with no significant curves or apparent obstructions or barriers in the pickup's lane of travel. These facts, like those in *Wolfer*, demonstrate the "practicability of [Hett] remaining entirely within his lane." *See Wolfer*, 780 N.W.2d at 652. Therefore, the evidence is, "sufficient to support the [circuit] court's conclusion [that Trooper Moody] had a reasonable and articulable suspicion [that Hett] had violated the practicable lane statute by crossing over the fog line." *See id.*[9]

---

(. . . continued)
> voluntariness of statements was unnecessary where it was "patently clear, on the record, that appellant knowingly, intelligently, and voluntarily waived his rights[.]").

9.     The fact that the jury ultimately acquitted Hett of the charge relating to violation of the practicable lane statute has no effect on this conclusion. *See*

(continued . . .)

[¶17.]        Even if, however, Hett's single instance of crossing over the fog line might be deemed insufficient to provide reasonable suspicion to support stopping his vehicle, there is additional evidence in the record to support the stop. Trooper Moody testified at the suppression hearing and at trial that, after passing by Hett's vehicle, he looked in his rear-view mirror and again saw it cross over the fog line by at least a tire width or more. At that point, he testified that he turned his patrol car around and pursued Hett's vehicle. Trooper Moody further testified that, during his pursuit, he saw Hett's vehicle cross over the center line by half a tire width.

[¶18.]        The circuit court declined to enter findings on these additional observations because Trooper Moody did not testify about them during the preliminary hearing, apparently deeming Moody's later suppression hearing testimony not credible for that reason. However, this Court "must look at all the facts available to [Trooper Moody] at the time the stop was effectuated" to "determine whether reasonable suspicion existed based on the 'totality of the circumstances.'" *Rademaker*, 2012 S.D. 28, ¶ 12, 813 N.W.2d at 177 (quoting *State v. Herren*, 2010 S.D. 101, ¶ 14, 792 N.W.2d 551, 556). This review is not limited to evidence considered at the suppression hearing, but may extend to evidence produced at trial. *See United States v. Hicks*, 978 F.2d 722, 724 (D.C. Cir. 1992)

_____

(. . . continued)
    *Heib v. Lehrkamp*, 2005 S.D. 98, ¶ 24, 704 N.W.2d 875, 885 (holding a subsequent acquittal irrelevant to the determination of probable cause to arrest) (citing *Michigan v. DeFillippo*, 443 U.S. 31, 36, 99 S.Ct. 2627, 2631, 61 L. Ed. 2d 343 (1979)). *See also Boone v. State*, 568 S.E.2d 91, 94 (Ga. Ct. App. 2002) (holding a "subsequent acquittal for [a] traffic offense [had] no bearing on whether the officer had reasonable suspicion of unlawful conduct at the time he instituted the traffic stop").

(noting that "reviewing courts routinely consider trial evidence in affirming pre-trial suppression rulings."); *United States v. Brewer*, 624 F.3d 900, 905 (8th Cir. 2010) (noting that "'[i]n reviewing the denial of a motion to suppress, [the court] must examine the entire record, not merely the evidence adduced at the suppression hearing.'") (quoting *United States v. Anderson*, 339 F.3d 720, 723 (8th Cir. 2003)).

[¶19.]     Here, a video recording of Trooper Moody's pursuit and stop of Hett's vehicle introduced by the State at trial establishes that, as soon as Moody approached Hett after the stop, he advised Hett that the stop was for crossing *both* the fog line *and* the center line.[10]  This on-scene statement about the basis for the stop sufficiently buttresses Moody's testimony at the suppression hearing and at trial to provide additional support for the validity of the stop.  *See State v. Ballard*, 2000 S.D. 134, ¶ 11, 617 N.W.2d 837, 840 (holding that the suspect's "conduct in crossing over the centerline and fog line provided reasonable suspicion to justify the initial stop" of her vehicle).

[¶20.]     In accord with the above analysis, we conclude that Trooper Moody had reasonable suspicion of a violation of law sufficient to support the stop of Hett's vehicle and, therefore, the circuit court did not err in denying Hett's motion to suppress the evidence obtained as a result of the stop.

[¶21.]     Affirmed.

---

10.    While the video of the pursuit itself shows some weaving by Hett's vehicle, the lighting and contrast are not sufficiently clear, given the distance between the vehicles, to confirm the actual crossing of the lane lines.  The recording is simply inconclusive on this point.

[¶22.]        GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and WILBUR, Justices, concur.