#31254-r-PJD
**2026 S.D. 37**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

v.

NATHAN BRADLEY HAWLEY,                    Defendant and Appellant.

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
BROWN COUNTY, SOUTH DAKOTA

THE HONORABLE GREGG C. MAGERA
Judge

JUSTINE AVTJOGLOU of
South Dakota Office of
   Indigent Legal Services
Sioux Falls, South Dakota                 Attorneys for defendant and
                                          appellant.


MARTY J. JACKLEY
Attorney General

JOHN M. STROHMAN
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff and
                                          appellee.


CONSIDERED ON BRIEFS
APRIL 21, 2026
OPINION FILED **06/10/26**

#31254

DEVANEY, Justice

[¶1.]        Nathan Hawley was pulled over by a police officer after making a
right-hand turn at an intersection.  The officer made the stop based on his belief
that Hawley violated a traffic law.  Hawley was arrested for driving while under the
influence of alcohol (DUI) and a blood sample was taken.  He moved to suppress the
evidence, claiming a violation of his Fourth Amendment rights because the officer
did not have a valid basis for the stop.  The magistrate court denied the motion and
found Hawley guilty after a court trial on stipulated facts.  After the circuit court
affirmed the magistrate's decision, Hawley appealed to this Court.  We reverse.

## Factual and Procedural Background

[¶2.]        On January 21, 2024, Officer Brady Woehl of the Aberdeen Police
Department was on patrol duty in Aberdeen, South Dakota, and was traveling
approximately one block behind a vehicle when he observed the vehicle approach
the intersection of 8th Avenue Southeast and South Kline Street.  The driver, later
identified as Hawley, came to a complete stop at the stop sign, activated his right
turn signal, and then made a right-hand turn.  Officer Woehl performed a traffic
stop because he believed Hawley violated SDCL 32-26-18.1 by failing to activate his
turn signal 100 continuous feet before making the turn.[1]  The traffic stop led to an

1.        SDCL 32-26-18.1 states:

> **Turning from wrong lane prohibited—Turn signal
> required—Violation as misdemeanor**.  No person may turn a
> vehicle at an intersection unless the vehicle is in proper position
> upon the roadway as required by §§ 32-26-17 and 32-26-18.  A
> signal of intention to turn right or left when required shall be
> given continuously during not less than the last one hundred
>                                                        (continued . . .)

-1-

investigation and Hawley's arrest for DUI, after which a sample of his blood was taken. An analysis of the sample revealed a blood alcohol concentration of .197%.

[¶3.]     After Hawley was charged with DUI, he filed a motion to suppress the evidence. He claimed the traffic stop violated his rights under the Fourth Amendment to the United States Constitution and Article VI, Section 11 of the South Dakota Constitution because the officer lacked reasonable suspicion or probable cause for the stop. The magistrate court held a suppression hearing. Officer Woehl, the sole witness, testified that the only reason he pulled over Hawley was for the alleged violation of SDCL 32-26-18.1 and that he observed no other traffic or equipment violations. It was apparent that Officer Woehl believed the statute always required the use of a turn signal for 100 continuous feet prior to making any turn at an intersection, under all circumstances. In his brief to the magistrate court, Hawley contended that the provisions of SDCL 32-26-18.1 do not apply to all turns, but only under circumstances set forth in SDCL 32-26-22.[2]

─────────────────────

(. . . continued)

>          feet traveled by the vehicle before turning. A violation of this
>          section is a Class 2 misdemeanor.

2.     SDCL 32-26-22 states:

> **Starting, stopping, or turning─Lookout─When signals required─Violation as misdemeanor.** The driver of any vehicle upon a highway before starting, stopping, or turning from a direct line shall first see that such movement can be made in safety and if any pedestrian may be affected by such movement shall give a clearly audible signal by sounding the horn, and whenever the operation of any other vehicle may be affected by such movement shall give a signal as required in § 32-26-23 plainly visible to the driver of such other vehicle of

(continued . . .)

Hawley argued that the State offered no evidence showing that these circumstances were present. In particular, he noted there was no evidence that any other vehicle may have been affected by his turn. He further argued that Officer Woehl made a mistake of law when applying SDCL 32-26-18.1 as the basis for the stop.

[¶4.] The magistrate court issued a memorandum decision containing its findings of fact and conclusions of law, holding that SDCL 32-26-18.1 was "clear, certain, and unambiguous" and required Hawley to use his turn signal for at least 100 continuous feet prior to the turn. The court acknowledged Hawley's argument regarding the application of SDCL 32-26-22 but concluded that, while there was "some overlap" between the two statutes, they were not in conflict. The court did not, however, address or make any findings regarding Hawley's contention that there were no facts presented requiring Hawley to use a turn signal under SDCL 32-26-22. Concluding that Officer Woehl had reasonable suspicion and an objective basis to stop Hawley for a violation of SDCL 32-26-18.1, the court denied the motion to suppress. Thereafter, a court trial was held based on the parties' joint stipulation of facts that mirrored the magistrate's factual findings. The magistrate court found Hawley guilty of DUI and entered a judgment of conviction and sentence.

---

(. . . continued)

the intention to make such movement. A violation of this section is a Class 2 misdemeanor.

We note that the term "highway" includes a city street. *See Hohm v. City of Rapid City*, 2008 S.D. 65, ¶ 5 n.2, 753 N.W.2d 895, 898 n.2 (citing SDCL 31-1-1 and SDCL 31-1-4). SDCL 32-26-23 provides the types of signals (arm, mechanical or electrical) that may be used to meet the requirements in SDCL 32-26-22.

[¶5.]     Hawley appealed his conviction to the circuit court, challenging the magistrate's denial of his motion to suppress. After reviewing the record, including transcripts of the suppression hearing and court trial as well as the briefs of the parties, the circuit court issued a memorandum decision followed by an order. The court noted the parties' agreement that the facts were not in dispute and that the sole issue was whether the magistrate erred as a matter of law. The circuit court concluded that the magistrate did not err in ruling the stop was constitutionally permissible, and it affirmed the magistrate's decision and Hawley's conviction. Hawley appeals to this Court, asserting the circuit court erred in affirming the denial of his motion to suppress because, in his view, the stop was based on Officer Woehl's mistake of law that was not objectively reasonable.

## Standard of Review

[¶6.]     "We review the denial of a motion to suppress based on the alleged violation of a constitutionally protected right as a question of law by applying the de novo standard of review." *State v. Rosa*, 2022 S.D. 76, ¶ 12, 983 N.W.2d 562, 566 (citation omitted). "The court's findings of fact are reviewed under the clearly erroneous standard, but we give no deference to the court's conclusions of law." *State v. Grassrope*, 2022 S.D. 10, ¶ 7, 970 N.W.2d 558, 560 (citation omitted). "Once those facts have been determined, the application of a legal standard to those facts is a question of law reviewed de novo." *Id.* (citation modified). Likewise, we review matters of statutory interpretation under the de novo standard, and "no deference is given to the circuit court's interpretation of" the statutes. *State v. Biteler*, 2025 S.D. 73, ¶ 12, 29 N.W.3d 894, 897.

## Analysis and Decision

[¶7.]     On appeal, Hawley argues there was no valid basis for the traffic stop because Officer Woehl acted under an erroneous understanding of the turn signal laws when he stopped him for failing to activate his turn signal for a continuous 100 feet prior to the turn under SDCL 32-26-18.1 without regard to whether any other vehicle may be affected as set forth in SDCL 32-26-22. He contends the stop was based on the officer's mistake of law, which Hawley asserts was objectively unreasonable because the statutes are unambiguous, this Court's prior precedent directly contradicts the officer's interpretation, and the officer testified he was not familiar with SDCL 32-26-22 and did not rely on that statute as a basis for the stop. Hawley argues the circuit court erred in its interpretation and application of the statutes.

[¶8.]     The circuit court properly recognized that the "when required" language in SDCL 32-26-18.1 "means that there must be instances where a turn signal is not required." Reading the statute together with SDCL 32-26-22, the court concluded, however, that the "may be affected" language in SDCL 32-26-22 means a turn signal is required "not only when the driver *knew* that somebody would be affected by a turning vehicle but also whenever there was a *possibility* that somebody would be affected[.]" (Second emphasis added.) The court then determined, based on the following circumstances, that Hawley was required to have signaled for at least the last 100 feet traveled before turning:

> Woehl witnessed Hawley driving in a residential area with a vehicle a block behind him. Despite this vehicle's distance from Hawley, the vehicle may have been affected by a failure to use a turn signal had this vehicle been speeding or otherwise

recklessly driving. An intersection in a residential area has a high likelihood of having people nearby, whether they be pedestrians or other vehicles. To Woehl's knowledge, there may have been other people (other than himself) affected by the failure to use a turn signal.

The circuit court thus concluded that Officer Woehl's observation of what he believed to be a violation of SDCL 32-26-18.1 provided reasonable suspicion for the stop.

[¶9.] We first address Hawley's erroneous contention that the circuit court applied the wrong standard when it analyzed whether there was reasonable suspicion to justify the stop.[3] Citing *State v. Wright*, he claims that because the stop resulted from the officer's observation of an alleged traffic law violation, it must be based on probable cause. *See* 2010 S.D. 91, ¶ 12, 791 N.W.2d 791, 795 (recognizing that "an officer's observation of a traffic violation, however minor, gives the officer probable cause to stop a vehicle" (citation modified)). Hawley's contention is misplaced.

[¶10.] Under the well-recognized exception to the Fourth Amendment's general rule protecting against warrantless searches and seizures, "an officer must have a 'specific and articulable suspicion of a violation' of law to support a traffic stop[.]" *State v. Bonacker*, 2013 S.D. 3, ¶ 9, 825 N.W.2d 916, 919; *see Grassrope*, 2022 S.D. 10, ¶ 8, 970 N.W.2d at 561 (noting that "[a] police officer need only have 'a reasonable suspicion to stop a vehicle'" (citation omitted)). Although the stop may not be based on "a mere 'hunch' . . . the level of suspicion the standard requires is

---

3. The circuit court further ruled that, even if the applicable standard is probable cause, that standard was met when the officer observed the traffic violation.

. . . 'obviously less' than is necessary for probable cause." *State v. Stanage*, 2017 S.D. 12, ¶ 7, 893 N.W.2d 522, 525 (quoting *Navarette v. California*, 572 U.S. 393, 397 (2014)). "Therefore, the basis needed for a traffic stop is minimal." *State v. Hett*, 2013 S.D. 47, ¶ 7, 834 N.W.2d 317, 320 (citation omitted). In *Hett*, we held that "[a]n officer's observation of 'a traffic violation, however minor,' provides reasonable suspicion of a violation of law sufficient to support a traffic stop." *Id.* ¶ 7, 834 N.W.2d at 319–20; *see Bonacker*, 2013 S.D. 3, ¶ 9, 825 N.W.2d at 919. The fact that the observation of a traffic violation also provides probable cause to stop a vehicle does not change the level of suspicion that must exist to satisfy the Fourth Amendment. Therefore, the circuit court did not err in applying the reasonable suspicion standard when assessing the validity of the stop.

[¶11.]        As to the court's ruling on the merits of the motion to suppress, Hawley argues Officer Woehl did not have a valid justification for the stop because it was based on his mistaken interpretation of SDCL 32-26-18.1. "[T]he starting point when interpreting a statute must always be the language itself." *Biteler*, 2025 S.D. 73, ¶ 13, 29 N.W.3d at 897 (alteration in original) (quoting *State v. Bettelyoun*, 2022 S.D. 14, ¶ 24, 972 N.W.2d 124, 131). "When the language in a statute is clear, certain[,] and unambiguous, there is no reason for construction, and the Court's only function is to declare the meaning of the statute as clearly expressed." *Id.* (alteration in original) (citation omitted). Furthermore, "we give words their plain meaning and effect, and read statutes as a whole." *Bettelyoun*, 2022 S.D. 14, ¶ 24, 972 N.W.2d at 131 (citation omitted).

[¶12.]     SDCL 32-26-18.1 is clear and unambiguous. The statute reads, in pertinent part, that "[a] signal of intention to turn right or left *when required* shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning." (Emphasis added.) The Legislature's inclusion of the "when required" phrase indicates that there are circumstances when a turn signal is *not* required. Under Officer Woehl's interpretation that such a signal must be used in *all* instances, the "when required" phrase would become surplusage. We "will not construe a statute in a way that renders parts to be surplusage." *Ibrahim v. Dep't of Pub. Safety*, 2021 S.D. 17, ¶ 13, 956 N.W.2d 799, 803 (citation omitted). The phrase must be given meaning. *See People ex rel. J.W.*, 2025 S.D. 38, ¶ 28, 24 N.W.3d 530, 538.

[¶13.]     Although SDCL 32-26-18.1 does not describe when a turn signal is required, SDCL 32-26-22 does. We have often noted that "when multiple statutes may apply to the same subject matter, 'a court should construe [the] statutes . . . in such way as to give effect to all of the statutes if possible.'" *Jans v. Dep't of Pub. Safety*, 2021 S.D. 51, ¶ 18, 964 N.W.2d 749, 755 (alterations in original) (quoting *Abata v. Pennington Cnty. Bd. of Comm'rs*, 2019 S.D. 39, ¶ 19, 931 N.W.2d 714, 721). SDCL 32-26-22 states, in pertinent part, that "[t]he driver of any vehicle upon a highway before . . . turning from a direct line shall first see that such movement can be made in safety . . . and *whenever the operation of any other vehicle may be affected by such movement* shall give a signal . . . plainly visible to the driver of such other vehicle of the intention to make such movement." (Emphasis added.)

[¶14.]     This Court previously interpreted SDCL 32-26-22 in *State v. Eidahl*, where we noted that the statute does not require the use of a turn signal in *all* instances; instead it "allows turning without use of a signal under certain circumstances (i.e. when the operation of another vehicle will not be affected by the turn)." 495 N.W.2d 91, 94 (S.D. 1993). In that case, a police officer, who was driving about a quarter of a block behind Eidahl, observed her stop at a stop sign, turn right, and then turn left into a private driveway without using turn signals. *Id.* at 92. The officer stopped the vehicle based on a violation of a city ordinance requiring drivers of vehicles to give a timely warning via a turn signal before turning. *Id.* at 93. Applying SDCL 32-26-22, the circuit court ruled that the traffic "stop was unlawful because the statute did not require [the driver] to use a turn signal under the circumstances of this case." *Id.* at 93. We upheld the circuit court's decision and its determination that the city ordinance—which required the use of a turn signal in all instances—directly conflicted with SDCL 32-26-22 and was therefore invalid. *Id.* at 94 (citing SDCL 32-14-3, which prohibits local authorities from enacting or enforcing "any rule or regulation contrary to the provisions of chapters . . . 32-24 to 32-34, inclusive[.]").

[¶15.]     Here, although the circuit court did not cite *Eidahl*, the court recognized the principle in SDCL 32-26-22 that the turn signal requirement only applies when another vehicle "may be affected" by the turning vehicle. However, the court then determined the statute was met in this case by applying hypothetical scenarios and facts not in the record and not included in the magistrate's findings or

the parties' stipulated facts.[4]  For example, the record of the suppression hearing contains no evidence that Hawley was driving in a residential area with pedestrians or multiple vehicles nearby, as suggested by the circuit court.  Thus, the court's premise that "[a]n intersection in a residential area has a high likelihood of having people nearby, whether they be pedestrian or other vehicles," is unsupported by any facts in this record.  So is the court's suggestion that a vehicle traveling a block behind Hawley may have been affected "had this vehicle been speeding or otherwise recklessly driving."  The circuit court's application of SDCL 32-26-22 to hypothetical possibilities was inconsistent with the language of the statute.  The requirement that a turn signal be "plainly visible to the driver of *such other vehicle*" presumes the existence of an actual vehicle that may be affected by the movement of the turning vehicle.  The only evidence of another vehicle in the vicinity was Officer Woehl's patrol car, which the parties stipulated was traveling "about one block behind Hawley's vehicle."  The record is devoid of any testimony by Officer Woehl

---

4.    The circuit court noted, in its memorandum decision, that the facts are not in dispute and the parties' stipulated facts accurately represent the magistrate court's findings of fact.  The stipulated facts relevant to the stop were limited to the following:

> 4.  Officer Woehl was traveling westbound about one block behind Hawley's vehicle.
>
> 5.  Officer Woehl observed Hawley approach the intersection of 8th Avenue Southeast and South Kline Street.
>
> 6.  Hawley came to a complete stop at the stop sign before activating his right turn signal.
>
> 7.  After Hawley turned right, Officer Woehl pulled over the vehicle for failing to activate his turn signal 100 continuous feet before making a turn in violation of SDCL 32-26-18.1[.]

that he, or any other driver, may have been affected by Hawley's turn at the controlled intersection. To the extent the circuit court found otherwise, it clearly erred.

[¶16.]     Notably, Officer Woehl did not stop Hawley because the officer believed he violated SDCL 32-26-22; in fact, Officer Woehl testified he was not familiar with this statute. Rather, the sole basis for the stop was the officer's belief that the use of a turn signal for 100 continuous feet prior to the turn is required in all instances. This constitutes a mistake of law on the officer's part.

[¶17.]     We have recognized that "[t]he Fourth Amendment tolerates only *reasonable* mistakes, and those mistakes—whether of fact or law—must be *objectively* reasonable." *State v. Tenold*, 2019 S.D. 66, ¶ 14, 937 N.W.2d 6, 10−11 (quoting *Heien v. N. Carolina*, 574 U.S. 54, 66 (2014)). While Officer Woehl undoubtedly believed that the turn signal statute applied to all turns and that Hawley therefore violated the statute, an officer's "*subjective* good faith is not sufficient to justify the stop[.]" *Wright*, 2010 S.D. 91, ¶ 21, 791 N.W.2d at 799 (citation omitted). "[O]fficers have an obligation to understand the laws that they are entrusted with enforcing, at least to a level that is objectively reasonable." *Id.* (alteration in original) (citation omitted). They "cannot act upon misunderstandings of clear statutes" and, although they "have broad authority to stop vehicles for any traffic violation, regardless of how minor . . . they must have a legal justification for the stop that is grounded in the state's law." *Id.* ¶ 17, 791 N.W.2d at 798 (quoting *United States v. Washington*, 455 F.3d 824, 828 (8th Cir. 2006)).

[¶18.]     Here, the unambiguous language of SDCL 32-26-18.1 and 32-26-22 makes it clear that a turn signal is not required in all circumstances, and Officer Woehl "was not free to rely on his subjective view of how [the] law should be interpreted." *Tenold*, 2019 S.D. 66, ¶ 15, 937 N.W.2d at 11. Additionally, our decision in *Eidahl*, which interpreted SDCL 32-26-22, does not support Officer Woehl's belief that a turn signal is *always* required. *See Tenold*, 2019 S.D. 66, ¶ 14, 937 N.W.2d at 11 (noting that the existence of previous judicial interpretations is "a relevant factor in determining the reasonableness of an officer's mistake of law" (quoting *Wright*, 2010 S.D. 91, ¶ 16, 791 N.W.2d at 797)). Officer Woehl testified he was not familiar with SDCL 32-26-22, and so his understanding of the governing law was incomplete and, in this case, objectively unreasonable. Because of the officer's objectively unreasonable mistake of law, there was no reasonable suspicion justifying the stop.

[¶19.]     We reverse the circuit court's order of affirmance and the magistrate court's order denying Hawley's motion to suppress and remand for further proceedings.

[¶20.]     JENSEN, Chief Justice, and MYREN and GUSINSKY, Justices, concur.

[¶21.]     SALTER, Justice, concurs in part and concurs specially.

SALTER, Justice (concurring in part and concurring specially).

[¶22.]     Our statement in *State v. Hett* that "[a]n officer's observation of a traffic violation, however minor, provides reasonable suspicion" is perhaps unfortunate because it implies that reasonable suspicion is *all* that it provides.

2013 S.D. 47, ¶ 7, 834 N.W.2d 317, 319 (citation modified). But as footnote 3 of *Hett* and our other decisions make clear, an officer's observation of a traffic violation actually provides *probable cause* that the law has been violated—a higher level of suspicion. *Id.* ¶ 7 n.3, 834 N.W.2d at 320 n.3; *State v. Wright*, 2010 S.D. 91, ¶ 12, 791 N.W.2d 791, 795 ("[A]n officer's observation of a traffic violation, however minor, gives the officer probable cause to stop a vehicle[.]" (quoting *State v. Akuba*, 2004 S.D. 94, ¶ 16, 686 N.W.2d 406, 414)).

[¶23.] Either is sufficient to justify a traffic stop, of course, but they vary distinctly in their degrees of relative suspicion, though, as Justice Thomas has noted, the difference may not be as noticeable after the Supreme Court's decision in *Rodriguez v. United States*. *See* 575 U.S. 348, 365–67 (2015) (Thomas, J., dissenting) ("On a more fundamental level, the majority's inquiry elides the distinction between traffic stops based on probable cause and those based on reasonable suspicion."). Still, it is undoubtedly true that an officer's direct observation of a traffic violation more easily supports a greater degree of suspicion than does a synthesis of indirect observations and inferences that only needs to be reasonably articulable.

[¶24.] But, regardless, the distinction between reasonable suspicion and probable cause does not matter here anyway. In cases where an officer is alleged to have made "a traffic stop based on a mistake of law, the legal determination of whether probable cause or reasonable suspicion existed for the stop is judged by whether the mistake of law was an 'objectively reasonable one.'" *United States v.*

#31254

*Washington*, 455 F.3d 824, 827 (8th Cir. 2006) (quoting *United States v. Smart*, 393 F.3d 767, 770 (8th Cir. 2005)).

[¶25.]     Distilled to its essence, the Court holds, correctly, that the traffic stop here was unconstitutional because Officer Woehl's belief that Hawley violated a traffic law was not objectively reasonable.  Therefore, the fact that the circuit court referred to reasonable suspicion instead of probable cause is inconsequential because the sole justification for the stop would fail to satisfy the Fourth Amendment under either standard.